Submitted on briefs September 20, 1927, modified December 4, 1928.

## MACLEAY ESTATE COMPANY *v.* CURRY COUNTY.

(272 Pac. 263.)

For appellant there was a brief over the names of *Mr. J. C. Johnson* and *Mr. T. T. Bennett.*

For respondent there was a brief over the name of *Mr. Collier H. Buffington.*

ROSSMAN, J.—The plaintiff instituted this suit to quiet title to a tract of land. The only portion of the answer material to the controversy before us alleges the existence of three public roads upon the aforementioned tract of land; one of these roads is known as the Bagnell Ferry Road; a second is referred to as the Port Orford-Ellensburg Road, and the third is designated as the Witness Rock-Salthouse Road. The reply concedes the legal existence of the first, and denies the defendant's allegations in regard to the second and the third. Upon the trial, the plaintiff admitted that the Port Orford-Ellensburg Road had been legally established, but it contended that subsequently it was abandoned, and that therefore its title as owner of the fee had been freed from the road easement. The defendant made no claim that the Witness Rock-Salthouse Road had an origin in dedication, or had been established pursuant to action by any public body, but claimed a right in behalf of the public to its continued use by prescription.

■■ The parties agree upon the principles of law applicable to this controversy but differ as to what facts are established by the evidence. Since no useful purpose will be served by setting forth a review of the testimony, we shall confine ourselves to a brief statement of those facts which we believe the evidence supports. The Witness Rock-Salthouse Road is approximately 350 feet in length and 30 feet

in width; it runs from the edge of Rogue River to the Roosevelt Highway in the town of Gold Beach. We are satisfied that it was not until the spring of 1916 that a use was made of this land which informed the plaintiff that a road was being established; at that time the present roadway was graded. This suit was begun April 10, 1926. The aforementioned work was neither done nor supervised by the county; in fact, the county had no connection of any nature with this improvement; its cost was borne by the plaintiff and two others. The completion of the work was followed immediately by the posting of notices by the plaintiff which bore the information that the road was a private one, and that permission to use it was revocable; at three different times such notices were posted. In 1925 the roadway was obstructed by a fence erected by the plaintiff. It is true that someone tore down the notices as time went on, and that the fence was demolished shortly after it was built, but, nevertheless, the erection of the fence served the purpose, as is suggested by Elliott on Roads and Streets (4 ed.), Section 198, of informing the public that the use was a permissive one. Indeed, there is reliable evidence to the effect that the public understood that those who used the road, enjoyed that privilege, not as a right, but as a permission from the plaintiff. Both Mr. W. A. Wood, County Judge from 1912 to 1924, and Mr. Chas. H. Bailey, his successor, testified that the county had never asserted any claim to the road. Upon the other hand the county had negotiated for some time with the plaintiff for the purpose of acquiring it as a public highway. We have read the testimony with care and fail to find any substantial

evidence to the effect that anyone ever claimed a right to pass over this road as a matter of right.

In *Stotts* v. *Dichdel*, 70 Or. 86 (139 Pac. 932), this court said:

"To establish a highway by prescription, the land impressed with the use must have been used by the public with the actual or implied knowledge of the land owner, adversely under claim or color of right, and not merely by the owner's permission, and uninterruptedly and substantially by way of a defined road for the period required to bar an action for the recovery of possession of land."

And in *Curtis* v. *LaGrande Water Co.*, 20 Or. 34 (23 Pac. 808, 10 L. R. A. 484), this court said:

" * * To acquire a right of prescription in the lands of another upon the presumption of a grant, the possession must be adverse, continuous, uninterrupted, and by the acquiescence of the owner of the land upon which the easement is claimed. If its inception is permissive or under a license from the owner, it cannot avail to work an ouster. To effect that result, the possession taken must be open, hostile, and continuous; 'he must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest.' Under this rule, an adverse possession cannot grow out of a permissive enjoyment; and so speak the decisions without a dissentient voice, including this court."

In *Chapman* v. *Dean*, 58 Or. 475 (115 Pac. 154), Mr. Justice Burnett, in pointing out succinctly the elements of a prescriptive right, stated as the first: "The possession must be hostile and under a claim of right." Since we conclude that the public never asserted any hostile claim in the land which constitutes the roadbed of the Witness Rock-Salthouse. Road, but upon the other hand availed itself of a

permissive right, our findings are that the defendant has no right in this road.

We come now to the plaintiff's contention, that the defendant has abandoned the Port Orford-Ellensburg Road. Briefly stated this claim is based upon the following facts. In the year 1890 high water in the Rogue River ruined a portion of the roadbed of this road, and caused the traveler to pursue a course a few feet farther east on higher land. This situation affected only three or four hundred feet of the road; yet, the part with which we are concerned is approximately 1200 feet in length. The traffic, which thus became diverted, never fully returned to the old roadbed, but used various portions of the open land above. Approximately the same area, which was affected by the flood, is of such a sandy nature that it is difficult of use by automobiles. Two or three years after the high water a number of buildings served by this road were moved to new locations, and thus the need for the road was thereby lessened. Two of these buildings, which were not large, were placed upon the roadbed, and obstructed it partially for a time at least. For approximately twenty years the board of county commissioners has expended neither money nor effort upon the maintenance and improvement of this road. Since the completion of the Bagnell Ferry Road in 1916, which is a portion of the Roosevelt Highway, most of the traffic which previously flowed over the Port Orford-Ellensburg Road was diverted to the Bagnell Ferry Road. Until the completion of the latter a ferry crossed the Rogue River between Wedderburn and Gold Beach, landing at Witness Rock; but, since the Bagnell Ferry Road supplies ferry service at a point five miles distant,

the Witness Rock ferry has been discontinued. This circumstance also lessens the need for this road. The Roosevelt Highway crosses the Port Orford-Ellensburg Road at an elevation eighteen feet higher than the latter; the crossing is effected by a dirt fill over the latter road, which, of course, constitutes a serious obstruction upon it. These are the principal facts the plaintiff relies upon. But there is no evidence that the use of this road has been completely abandoned; nor is there any evidence, as was present in *Bitney* v. *Grim*, 73 Or. 257 (144 Pac. 490), relied upon by the plaintiff, that it is "impossible to use the old way." Upon the contrary there are small tracts of land, and occupied buildings, which would be without a public means of egress and ingress if this road was closed. The blocking of the road by the aforementioned fill was protested by the board of county commissioners and the obstruction was later avoided by the construction of a detour. The very fact that the detour was built, and is used, is persuasive evidence that this road serves a purpose, The plaintiff built a fence across this road in 1915, but shortly thereafter it was removed. Since the plaintiff now admits that the road was properly dedicated to the public, its construction of the fence loses much of its significance, but the prompt removal of the fence is indicative that the public felt a need for the road, and had no intention of abandoning it. The Port Orford-Ellensburg Road and the Witness Rock-Salthouse Road serve two purposes in common; both afford a means of access to and egress from the river at Witness Rock, and both reach the Bagnell Ferry Road. Since we have held that the Witness Rock Road is not a public way, the traffic which now resorts to it will be diverted to the road

in question, and thus the latter's usefulness will be increased. In fact it will thus become the only public approach to the river at Witness Rock. If both roads are closed, we understand that the traveler will be forced to go five miles upstream before he could gain access to the river at a public landing. In recent years the plaintiff has repeatedly endeavored to persuade the County Court to vacate this road, and has offered to dedicate to the public the Witness Rock Road in consideration for such action. It seems to us that these efforts upon its part constituted an admission that the road has not been abandoned. Likewise, in previous litigation, the plaintiff through its officers has made references to this road which appear to recognize it as a public highway. There is nothing in the record which satisfies us that the board of county commissioners intended to abandon this road; in fact the opposite intention is revealed; for instance, when the County Court rejected the plaintiff's requests for a vacation of this road it thereby, in effect, signified a public need for this road and a purpose to retain it. The protest against the fill, and the construction of the detour manifest a similar attitude. Likewise the erection of the plaintiff's fence was followed promptly by a petition bearing the signatures of a number of residents of the vicinity protesting against the fence remaining in place, and the evidence shows that the road even now is being actually used, although the witnesses describe the quantity of traffic as "very little," except when special circumstances bring it a greater user for a limited time.

■■ "Once a highway always a highway" is an old maxim of the common law, which may serve some useful purpose in this controversy. Partly as a

corollary to it we have the rule, that he who asserts an abandonment has taken place must discharge the burden of proof: Elliott, Roads & Streets (4 ed.), § 1173. In *Bitney* v. *Grim, supra,* this court held that in determining whether a road has been abandoned the acts of relinquishment must be accompanied by an intent to permanently part with the right of use. The courts generally demand proof of intent to abandon in addition to evidence of nonuser, and the intention to abandon must be established clearly and satisfactorily, because the proof to the contrary is aided by the presumption that a thing shown to exist is presumed to continue: Elliott, Roads & Streets (4 ed.), § 1174. A case submitting a set of facts somewhat similar is *Kelly Nail & Iron Co.* v. *Lawrence Furnace Co.,* 46 Ohio. St. 544 (22 N. E. 639, 5 L. R. A. 652). The Ohio court held that the proof of abandonment was insufficient. We conclude that the evidence fails to show that the public abandoned this road and also fails to show an intention to do so.

It follows from the foregoing that the decree of the lower court should be modified so as to eliminate its findings that the Witness Rock-Salthouse Road is a public highway and substitute therefor a finding that the defendant is possessed of no interest in that portion of the plaintiff's lands. In all other respects the decree of the Circuit Court is affirmed. The plaintiff may have its costs in this court.

MODIFIED.