Argued December 12, 1929; affirmed March 4, 1930

STATE ex rel. MACLEAY ESTATE CO. *v.* BAILEY

(285 P. 809)

*L. A. Liljeqvist* of Marshfeild and *J. C. Johnson* of Gold Beach (T. T. Bennett of Marshfield on brief) for appellant.

*Marvin K. Holland* of Portland (Carey & Kerr of Portland and Collier H. Buffington of Gold Beach on the brief) for respondent.

ROSSMAN, J. This proceeding was instituted for the purpose of having the defendant adjudged guilty of a civil contempt of court; the affidavit, which began the proceeding, charges the defendant with the violation of a decree of the circuit court of Curry county, which was entered October 4, 1926, in a suit in which 33 individuals, designated by name, were the defendants, together with "about 50 other persons whose names are unknown, engaged in commercial fishing on Rogue river, and all other persons of the same class." The defendant was not one of the 33, but it is contended that he is a member of the latter class. In support of his plea of not guilty the defendant contends (1) that he was not bound by the terms of the aforementioned decree, because he was not a party to that suit; (2) that the terms of the decree are so indefinite in regard to the act which the relator claims that the defendant committed that it is impossible to say with certainty that his act was governed by any provision of the decree; (3) that even the relator's construction of the decree does not prohibit the defendant's act. Due to these contentions of the parties a brief summary of the facts out of which the aforementioned suit, which the parties refer to as the Einstoss suit, arose becomes desirable. The Macleay Estate company, relator herein, is the owner of extensive tracts of land fronting on the south bank of the Rogue river at the point where that stream empties into the ocean. This land is so situated that it is very useful to commercial fishermen, fish buyers and cannery operators. Since the Macleay Estate company is engaged in the commercial fish industry it desires to preserve to itself the usefulness of this land. In that vicinity at Gold Beach a competitor of the relator maintains a salmon cannery and various commercial fishermen and fish

buyers maintain their headquarters. A strip of land 60 feet in width, which constitutes the roadbed of the Port Orford-Ellensburg highway, where the latter leaves its land course and enters the tidelands, is practically the only means of access to the river available to the above-mentioned individuals. For a description of this road see *Macleay Estate Co. v. Curry County,* 127 Or. 356 (272 P. 263). The fact that these commercial fishermen and others, who have need for going to and from the river, are confined to this narrow strip, and a disregard by some of the aforementioned of the Macleay Estate company's property rights, have caused its lands to be frequently subjected to acts of trespass. These trespasses finally resulted in its institution of the Einstoss suit. The immediate cause of that suit was the act of Einstoss and his associates in mooring scows in front of the premises of the relator and conducting thereon a commercial fish business. That suit ended in a decree for the plaintiff. The only portions of that decree, which are pertinent to our present controversy, are the following:

"* * * It is hereby ordered, adjudged and decreed that the defendant, S. Einstoss, and his employees * * * and all other agents or employees of the said defendant, S. Einstoss, and all other persons engaged or hereafter to engage in the buying of fish on Rogue river for commercial purposes, or engaged or to engage in the preparation of salmon on Rogue river for the market, by icing, packing or otherwise preparing said fish for market, their agents and employees, be and they are hereby perpetually enjoined and restrained from anchoring or maintaining in the waters of Rogue river in front of * * * a scow or scows or other floating device, or from fastening or anchoring or maintaining any other floating device on the waters of Rogue river in front of the lands of the plaintiff, or any of same.

"It is further ordered, adjudged and decreed that the defendant, A. E. Bookwalter, and his agent, Frank Cox, and also all other agents and employees of the defendant, A. E. Bookwalter, and the defendants, Alfred Jutstrom and W. H. Jutstrom and their agents and employees, and all other persons engaged or hereafter to engage in the buying of fish on Rogue river for commercial purposes or engaged or to engage in the preparation of salmon on Rogue river for the market by icing, packing or otherwise preparing said fish for market, be and they are hereby enjoinel and restrained from maintaining in the highways of Curry county, where any of the same pass through the lands found to belong to plaintiff and hereinafter described, and particularly at or near the point where said highways cross * * * or the tidelands fronting thereon, and are perpetually enjoined and restrained from setting up a business of fish buying or fish packing in said highway or from maintaining in said highway fish scales, fish boxes, ice or other paraphernalia used or to be used in connection with fish buying operations. But that said defendants, fishermen and others have the right to use the roadway at or near Witness Rock in said lot 3 where it enters the waters of Rogue river for the legitimate purpose of travel or transportation, either freight or passengers, to or from watercraft at the place where the said public road intersects with the navigable waters of Rogue river. The use, however, must be reasonable and so as not to interfere with the right of others to use the roadway and the river in the same manner. * * *"

A copy of that decree was served on the defendant. Later the county court of Curry county, of which the defendant is chairman, authorized the Gold Beach Packing company to construct, at the point where the highway enters the river, a wharf extending into the water. This wharf is described in detail in our decision in *Macleay Estate Co. v. Gold Beach Packing Co.,* 132 Or. 568 (284 P. 200). The Gold Beach

Packing company is the operator of a salmon cannery which stands upon a small tract of land adjoining the aforementioned roadway on the east; the lower edge of its property extends to approximately the high water mark. This property and the wharf are so situated that the land end of the latter joins the cannery building. Under this wharf and as a part of it, the packing company constructed a narrow, floating walk extending from the shore to the outermost part of the wharf which is used by fishermen and others as a means of gaining access to the highway from their boats, and from the latter to the shore. For more than half a century the public has used the junction point of the road and the river as a means of access from the one to the other; until recent years a ferry boat which crossed the river made its one terminus at this point.

The specific act which the affidavit of the relator charges the defendant committed in violation of the aforementioned decree is thus stated:

"* * * On August 15, 1927, and almost daily prior thereto, since on or about May 15, 1927, and almost daily thereafter until the present time, the said C. H. Bailey has anchored and caused to be anchored on and in the roadway known as the Port Orford-Ellensburg roadway, where the same enters the waters of Rogue river, * * * his fish boat * * * the said fish boat being so anchored and maintained at anchorage by the said defendant by tying the same to said floating log raft, or floating walkway and to the said dock by means of a rope or cable; said fish boat being so anchored by the said defendant, at stages of high water floats on the water and at stages of low water rests on the land of the relator over which said easement, or roadway as claimed, in such a way as to greatly impede the relator, its servants, agents, licenses, officers and employees in their ingress and

egress over one part of said tidelands, obstructing the use of the tidelands, and road occupied by said boat;
\* \* \*,,

The defendant's boat is 22 or 23 feet in length and 4 feet in beam; it is propelled by hand; a layman would probably describe it as a large, flat-bottomed, rowboat. When moored under this wharf it floated on the water at both high and low tide. During the fishing season, which lasts for about 60 days, it was generally moored at this place from midnight until the following 7 p. m. While many other boats were moored under the wharf the evidence shows that there was always room for others to do likewise. The evidence does not indicate that these moored boats ever interfered with any one's access to the relator's property. The wharf was rarely used, and the evidence warrants no conclusion that the small craft underneath interfered with its usefulness. In fact the relator denies that the wharf was ever constructed to serve a public demand, and insists that the Gold Beach Packing company was permitted to erect it as an adjunct to its plant.

■ We come now to the question whether there is any portion of the decree which prohibited the defendant's act. To justify a court in adjudging one guilty of contempt for the alleged violation of an order, the act complained of must be so clearly defined in the order that it will appear with reasonable certainty that the order has been violated; hence, orders which are uncertain and indefinite in their terms will not sustain a judgment of guilty in contempt proceedings. For a collection of cases justifying the foregoing statement see 13 C. J., Contempt, p. 15, § 17. From *Terminal Railroad Association v. United States*, 266 U. S. 17 (45 S. Ct. 5, 69 L. Ed. 150), we quote:

"In contempt proceedings for its enforcement, a decree will not be expanded by implication or intend-

ment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought, and the facts found must constitute a plain violation of the decree so read.''

It is obvious that unless the defendant's act violated some provision of the decree in the Einstoss suit no finding against him would be warranted. Our present duty is not to determine the rights of the parties at the place where the road and the water meet, but to assume that their rights are as stated in the Einstoss decree. And since this proceeding does not attack the validity of the order of the county court, which authorized the construction of the wharf, we must assume that the structure was erected without infringing upon any of the relator's rights. Hence, if the defendant violated no order contained in the Einstoss decree, we cannot find against him even though we may believe that the repeated mooring of his boat for many hours of the day upon a highway, whose fee is in the relator, violated some right belonging to it. The only portion of the decree, which we believe is applicable to the defendant's act, is that which provides: ''fishermen and others have the right to use the roadway  *  *  *  where it enters the waters of Rogue river for the legitimate purpose of travel or transportation, either freight or passengers, to or from watercraft at the place where the said public road intersects with the navigable waters of Rogue river. The use, however, must be reasonable and so as not to interfere with the right of others to use the roadway and the river in the same manner.'' This is the part of the decree which the circuit court felt was applicable to the controversy. The relator calls to our attention no specific portion of the decree, but confines its argument almost entirely to the foregoing

provision; hence, we assume that this is the part which it relies upon. While this controversy apparently is being conducted in the interest of keeping the highway open to public traffic, yet even a hasty examination of the briefs discloses that both parties are primarily interested in the welfare of their respective business pursuits. Evidently the Macleay Estate company's principal complaint, although it is not available to it in this proceeding, is that property owned by it, and in which it has yielded to the public an easement for travel purposes only, should not be delivered to a competitor so that he may maintain upon it an adjunct to his cannery; the defendant and other fishermen are interested in securing as favorable an access as possible to the independent buyers of fish. It is obvious that the wharf constructed by the Gold Beach Packing company, with its ready facilities for mooring fishing craft, has attracted to this spot these small vessels, and that thus it offends the relator more than any one individual boat. As we proceed we shall assume that these boats are moored in the public roadway because both parties continually indulge in that assumption.

■ It will be observed that the portion of the decree, just quoted, does not specifically mention the mooring of boats. Possibly the absence of an order upon this subject is due to the fact that no extended practice of mooring boats at this place prevailed until the wharf was built; that structure and its facilities for mooring boats was apparently regarded by fishermen as a public wharf and mooring place. The decree, however, provides that the public shall have the right "to use the roadway * * * where it enters the waters of Rogue river for the legitimate purpose of travel or transportation, either freight or passengers, to or from water-craft"; this right, thus recognized in the

public, certainly includes the privilege of stopping long enough to load and unload "either freight or passengers." When the defendant approached the wharf with his boat he generally had in it a quantity of fish, and also his associates in his fishing venture. His comings and goings, including the time spent in loading and unloading, therefore, violated no provision of the decree.

■ The decree provides that the use made of this place by each one who resorts to it "must be reasonable and so as not to interfere with the right of others to use the roadway and the river in the same manner." This language is not definite, and possibly amounts to nothing more than a general statement of the law applicable to such a place. The word "reasonable" does not designate a right, but like the words which follow it, merely places a limitation upon some right which is named somewhere else; hence, the right is that of making use of this place for the purposes of travel and transportation. The use, however, must be reasonable and not interfere with the right of others to use the place in the same manner. We assume, therefore, that while mooring is not mentioned in the order it is included by necessary implication, and that the following limitations are placed upon it: (1) it must be a part "of travel or transportation, either freight or passengers" as distinguished from the storing of a boat after it has ceased to be engaged in travel or transportation; (2) it must be "reasonable"; and (3) it must not be exercised in such a manner that it will "interfere with the right of others to use the roadway and the river in the same manner." If the decree contains the prohibition, which the relator contends the defendant violated, we must find it in the qualifying words above analyzed.

The third restriction is the only limitation upon the right which is specific and definite. An ordinary fisherman, with a copy of the decree before him, could readily understand whether his proposed mooring was in harmony with, or in violation of, this provision of the decree. The evidence, and the findings of the circuit court are to the effect that the defendant did not violate this provision; hence, we conclude that this limitation upon the mooring was not violated.

■■ The first and the second limitations we shall consider together. The provision, that the use of this place must be "reasonable" and must in the course "of travel or transportation," does not necessarily indicate that it is aimed against the mooring of a fishing boat for approximately 18 hours between fishing excursions. This provision may have been intended to prohibit the public from storing logs, timbers, refuse, or disabled boats for indefinite periods of time at this place; or from committing at this junction point of the water and land highways, any other act obviously foreign to the purposes of a highway. But we shall adopt the relator's construction and hold that one of its purposes is to prohibit the storing of boats there when they are no longer engaged in transportation; these words are not those of the relator, but state the final effect of its argument. In applying these limitations to the use to which this space may be put, we must bear in mind that after the decree was entered a wharf was built with convenient facilities for mooring boats, and that the county and the builder of the wharf offer no objections to the use made of it by the fishermen. We believe that it is also proper to consider (1) that the mooring of the defendant's boat never interfered with any one's access to the relator's property, (2) that the defendant's boat was kept at

this place only during the fishing season and then for a portion of the day only; in other words it was daily put to some service, and (3) the space available for mooring boats was never crowded. Under these circumstances we feel justified in attaching great weight to the finding of the judge of the circuit court to the effect that the defendant's use of this place was not unreasonable. Since the language of the decree is lacking in definiteness we ought not make a finding against the defendant until our minds are reasonably satisfied that the defendant, as a person of ordinary intelligence, knew that his conduct at this place violated the language of the decree. Governed by these considerations we do not feel justified in holding that the defendant's use of this space was unreasonable, or was not incidental to transportation. It follows that in our opinion the evidence does not show a violation of the decree.

In expressing ourselves in the above manner we have intended to intimate no views concerning the suit involving the construction of the wharf.

Having arrived at the foregoing conclusion, we deem it unnecessary to determine whether the defendant as a member of the fisherman class was bound by the decree in the Einstoss suit.

The judgment of the circuit court will be affirmed.

COSHOW, C. J., BEAN and RAND, JJ., concur.