COVINGTON v. SECOND JUDICIAL DISTRICT
COURT, IN AND FOR WASHOE COUNTY, ET AL.

No. 3132

October 25, 1935.                    50 P. (2d) 517.

*Hawkins, Mayotte & Hawkins,* for Petitioner:

314

*Thatcher & Woodburn,* for Respondents:

**OPINION**

By the Court, Ducker, C. J.:

In obedience to a writ of certiorari issuing out of this court, there has been certified up the record and proceedings of the district court in an action for divorce wherein Jean Covington is plaintiff and petitioner is defendant.

It appears therefrom that a special appearance was made by petitioner on a motion to quash and set aside the service of summons, and that a motion was noticed by plaintiff for alimony pendente lite, and counsel fees. At the time for hearing the same the court concluded to hear the motion to quash in advance. Pursuant

thereto the affidavit of petitioner made in support of his motion was read in evidence, and the plaintiff was called as an adverse witness by petitioner and examined in cross-examination. When petitioner had concluded, plaintiff's counter affidavit was read in evidence and the matter submitted for decision. Whereupon the court made an order denying petitioner's motion, and ordered that he be given twenty days in which to plead. A further order was made setting for hearing plaintiff's motion for alimony pendente lite, and counsel fees.

Service of summons was made upon petitioner at the airport near Reno, in Washoe County, Nevada, where he had come by airplane from the east.

Want of jurisdiction of the person of the petitioner is predicated upon the claim that petitioner, being without this state, to wit, in the State of New York, was willfully deceived and enticed into this state and jurisdiction of the court by plaintiff for the purpose of effecting service of summons upon him. Hence petitioner's conclusion that the orders were null and void. Whether such deception and enticement were practiced by plaintiff was the issue heard and determined adversely to petitioner by the trial court on the hearing of the motion to quash the service of summons.

■■ If we understand petitioner's position aright, we may review and weigh the evidence, and if we feel that petitioner should be believed rather than plaintiff, may substitute our conclusion for that of the trial court. We are certain that we cannot weigh the evidence or pass upon the credibility of witnesses. If we may review the sufficiency of the evidence, and concerning this we need not express an opinion, our examination must be directed solely to determining whether, from the competent evidence before it, the decision of the lower court upon the question of its jurisdiction is sustainable. If so, its decision cannot be set aside in this proceeding. If there is any evidence, that is, substantial legal evidence, tending to prove the fact on which the jurisdiction of the lower court depends, we must

hold that the court, having determined that fact, had jurisdiction. People v. Board of Police, 69 N. Y. 408; Bergevin v. Wood, 11 Cal. App. 643, 105 P. 935; Stumpf v. Board of Supervisors, 131 Cal. 364, 63 P. 663, 82 Am. St. Rep. 350; Jackson v. People, 9 Mich. 111, 77 Am. Dec. 491; 2 Spelling Extraordinary Relief, secs. 1949, 2019, 2023; 5 R. C. L. p. 251; 82 Am. St. Rep. page 355, note.

Petitioner refers to 11 C. J. sec. 367, as authority for his contention. We see nothing in that text which runs counter to the rule we have expressed, nor in the decisions cited in the note. On the contrary, Stumpf v. Board of Supervisors, supra, explicitly supports that rule. And in the Golden Gate Tile Co. v. California Superior Court, 159 Cal. 474, 114 P. 978, 980, also cited in the note, the court, quoting approvingly, said: "If an inferior court should make a finding in favor of its jurisdiction, basing the finding on conflicting evidence, it must be conceded that such a determination would be conclusive upon this court; but where there is no conflict in the evidence, thus presenting a clear question of law only, and an inferior court holds that it has jurisdiction when under the uncontradicted evidence it has not, then its judgment may be annulled on writ of review."

In Regina v. Green, 12 Ont. Pr. 373, also cited in the note in support of the text, a summary conviction was had before a police magistrate. The information, evidence, and conviction had been removed into the Queen's Bench Division by certiorari. The court held: " * * * If any fact found by the magistrate is disputed, and he would have no jurisdiction had he not found that fact, then the evidence may be looked at to see whether there was anything to support his finding upon it."

The Nevada cases cited in the note and by petitioner in his brief do not support his contention. State v. Humboldt County Com'rs., 6 Nev. 100, cited, is squarely against it. In Floyd v. District Court, 36 Nev. 349, 135 P. 922, 4 A. L. R. 646, relied upon by petitioner, no disputed question of fact was involved, but merely

a question of law, which the lower court decided erroneously in divesting itself of jurisdiction. The decision in Floyd v. District Court would be analogous if in the instant case the lower court had decided in favor of its jurisdiction in the absence of evidence as to that fact so complete that the question became one of law. If we have misconceived petitioner's contention, as we have stated it above, then it cannot be else than that plaintiff's evidence furnished by her affidavit and cross-examination is so weak and inconclusive as to present no real conflict.

We perceive no useful purpose in setting out in detail the evidence furnished by the opposing affidavits and plaintiff's cross-examination. Much of it is immaterial. Suffice it to say, it appears that the parties were married in Reno, Washoe County, Nevada, on August 12, 1934, and went to live in the State of North Carolina. On or about May 30, 1935, they returned to Reno and soon afterwards removed to Lake Tahoe for a short time. During their stay there differences arose, and plaintiff went to the home of her parents in Reno. Petitioner went to the Riverside hotel in that city and shortly afterwards departed for North Carolina. He asked plaintiff to go with him, but she refused.

On his trip south, at divers places along the route and at Washington, D. C., on the way from North Carolina to New York City, and at the latter place, he communicated with plaintiff at Reno by telephone, and talked with her about their differences. He states in his affidavit that in the conversations which ensued upon his telephoning her from Denver City on his way south, it was agreed that she would come and live with him in New York City or vicinity, and would meet him in that city early in September; that she then said it was too hot at that time to live in New York City, and requested him instead of going on south to return to her in Reno, and that they would spend the intervening time in that city; that in nearly all of said conversations she suggested, requested, and invited affiant to return to Reno and spend the intervening time

until September with her in Reno; that on his arrival in New York City on or about the night of July 13 and again on the evening of July 14, he called her at the telephone and in their conversations she requested him to return to Reno at once and stay until fall, when they would go back to New York City; that if he would come back she would meet him at the airport and go to the Riverside hotel in Reno and everything would be all right; that in the latter conversation he told her he did not know whether he would return to Reno or not, and asked her if she contemplated any legal proceedings against him in the event he returned; that she told him, no, nothing of the kind, and for him to come on back and she would meet him and everything would be all right; that she had no purpose or plan of suing him or starting any legal proceedings. He alleges that he returned, relying upon her promises, and but for such promises and inducements would not have returned to the State of Nevada.

Plaintiff, in her counter affidavit and in her cross-examination, states that she never agreed that she would go to New York City to live; that she never in any of the conversations stated to petitioner that no suits or actions would be brought; that she never at any time suggested or requested that he return to Reno, and that she believes he returned for the purpose of effecting a reconciliation.

It will be observed from the foregoing summary that the trial court's order refusing to quash the service of summons was made upon conflicting evidence. This becomes more apparent from the fact that she was before the court and subject to cross-examination, while petitioner was not available as a witness, although a subpena had been issued for him and counsel for plaintiff made repeated demands that he appear for cross-examination on his affidavit. The court, in its oral remarks in making the order, said: "She is before the Court. I had the opportunity of seeing her, and if she tells an untruth, I am deceived. I do not believe she does, though she might have been

evasive in some things, but I do not believe she tells an untruth."

 As the evidence before the court below supports its orders, the writ of certiorari must be dismissed.

It is so ordered.