STATE OF NEVADA, Ex Rel. ALFRED MERRITT SMITH, State Engineer of the State of Nevada, Relator, *v.* THE SIXTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Humboldt, and THOMAS J. D. SALTER, Judge of Said Court, Respondents.

No. 3442

March 30, 1946.                                    167 P. 2d 648.

*Alan Bible,* Attorney General, *George P. Annand* and *Homer Mooney,* Deputy Attorneys General, and *W. T. Mathews,* Special Assistant Attorney General, of Carson City, for Relator.

*William M. Kearney,* of Reno, for Respondents.

## OPINION

By the Court, TABER, C. J.:

In May 1935, after due proceedings under the water law, secs. 7890–7978, N. C. L. 1929, the Sixth judicial

district court in and for Humboldt County entered its "Findings of Fact, Conclusions of Law and Decree in the Matter of Determination of the Relative Rights in and to the Waters of the Little Humboldt River and Its Tributaries in Humboldt and Elko Counties." Said decree will sometimes be referred to herein as the Carville decree. No appeal has ever been taken from it.

Henry McCleary Timber Company, Godchaux Cattle Company, Gerhard Miller, Sr., and Gerhard Miller, Jr., are four of the several dozen ranch owners and water users on said Little Humboldt River stream system. They were parties, or are successors in interest to parties, whose water rights were adjudicated in the Carville decree.

In April 1945, the state commenced a criminal contempt proceeding in said district court against Frank McCleary, manager of the timber company. The complaint alleged that defendant had interfered with the state engineer and his assistants in the distribution of the waters of said river and its tributaries, including Martin Creek. It charged that between January 25 and March 2, 1945, defendant unlawfully and contemptuously placed an earthen dam in the channel of Martin Creek in such manner as to divert all its waters onto the timber company's lands and prevent the state engineer or his assistants from distributing to said cattle company, said Millers, or either of them, water which had been decreed to them in and by the Carville decree; that defendant failed to remove said dam, notwithstanding notice directing him to do so; that on two occasions defendant failed to install a head gate at a certain diversion point on Martin Creek, notwithstanding notice from the state engineer, pursuant to sec. 7941, N. C. L. 1929, requiring him to do so. Said charges and others set forth in the complaint are therein alleged more specifically, at greater length and in more detail than here; and it is alleged that defendant's acts prevent the state engineer and his assistants from distributing the waters

of said river and its tributaries pursuant to said decree, and constitute unlawful interference with officers of this court.

Defendant demurred to said complaint upon the ground that it failed to state facts sufficient to constitute a criminal contempt or any contempt, and the further ground that the court was without jurisdiction.

In May 1945, the state commenced another criminal contempt proceedings in said district court against said Frank McCleary and three other defendants—Gose McCleary, Diego Gurridi and Dimas Alzola. Among other charges, the complaint alleged that on May 1, 1945, two water commissioners posted a statutory notice of regulation of diversion of water at a point on the Grayson ditch, also known as the Big ditch, where there were remnants of an old dam, the purpose of said commissioners being to keep the river channel at that point open in order that water would flow down and serve the water rights of Gerhard Miller, Jr., and Gerhard Miller, Sr.; that on May 5, 1945, defendants Gurridi and Alzola, employees of the McClearys, willfully and contemptuously dammed up the river channel and stopped the flow of all water therein, diverting all of it onto the McCleary lands; that said unlawful and contemptuous conduct on the part of the defendants prevents the state engineer and his assistants from delivering to the Millers the water to which they are entitled under the Carville decree, prevents the state engineer and his assistants from distributing the waters of the Little Humboldt River and its tributaries pursuant to said decree, and constitutes unlawful interference with officers of this court. Other charges were set forth in the complaint and, as in the first case, the matters therein were alleged at greater length and in greater detail than here given.

Defendants demurred to said last-mentioned complaint upon the ground that it failed to state facts sufficient to constitute a criminal contempt, and the further ground that the court was without jurisdiction to hear or entertain said complaint.

The demurrers were argued at great length, and it was stipulated that in considering them the court could examine the Carville decree along with the complaints. In due time the court signed and filed written orders sustaining both demurrers.

In the first ruling the court, among other things said: "An examination of the decree also indicates that it is uncertain in many respects in that the point of diversion and the names and locations of the ditches through which water is to be distributed are not specified. Many essential items necessary to make a decree definite and certain without leaving anything to be interpreted by the water users or the water commissioners are omitted from the decree. In other words, the decree leaves certain vital matters to be interpreted either by the water commissioners or by the water users. The supreme court has said on several occasions that a decree involving water rights should be as definite and certain as language can make it."

In ruling on the demurrer in the second case the court said, in part:

"While the facts in the instant case are different than the facts in the first contempt case, they are in their nature similar and involve the same decree and the same property and the claimed water rights and ditches of the same parties. The Court has announced its decision in the case of State of Nevada vs. Frank McCleary and the same legal situation exists here as was announced in that case.

"The Court has at the suggestion of counsel for both parties examined the decree so as to ascertain the water rights which the State Engineer alleges he is distributing, but on account of the uncertainty involved in connection with the points of diversion, ditches, dams, as well as the confusion concerning the channels and ditches, the Court is unable to find that the complaint shows a contempt has been committed.

"The complaint is not definite and certain enough in the light of the decree to indicate to the Court that the

State Engineer was attempting to distribute water in accordance with the decree. It was said in the case of State ex rel. Hinckley v. Sixth Judicial District Court [53 Nev. 343], 1 P. 2d 105, that it would not be a contempt of court to interfere with the State Engineer unless he was distributing water in accordance with the decree.

"The cases cited in the companion case of State of Nevada v. Frank McCleary heretofore argued, establishes the rule that a judgment in a water case must be specific and certain. It must specifically determine the rights of the parties in a definitive manner. 3 C. J. 1197, section 131.

"The case entitled 'In re Bassett Creek and its Tributaries in White Pine County,' Nev., 155 P. 2d 324, seems to be in point when the complaint for a criminal contempt is examined in the light of the terms contained in the decree.

"I am unable to find from the complaint that a contempt has been committed."

■ There being no right of appeal to this court in criminal contempt cases (Phillips v. Welch, 11 Nev. 187), nor, as contended, any plain, speedy, and adequate remedy in the premises, the state has applied to this court for a writ of review, claiming that the district court, in sustaining the demurrers, exceeded its jurisdiction. Attached to the application and affidavit are copies of the complaints, demurrers, rulings on the demurrers, and a copy of the Carville decree.

It is alleged that in arguing the demurrers, defendants' main attack upon the complaints was that the Carville decree was so indefinite, uncertain and invalid and void as to the defendants that no contempt on their part could have been committed as alleged in said complaints, for the reason that said decree contains no definite statement and specification of points of diversion of the ditches of the parties involved in the contempt proceedings.

It is further alleged that "in many instances the Carville Decree does not contain specific designations of the points of diversion and/or the names of ditches of particular water rights granted and decreed therein, but in lieu thereof gives the source of the water and refers to the cultural maps pertaining to such water rights filed in the adjudication proceeding in said district court; that said cultural maps then and there were made a part of said decree by reference * * *." It is also alleged that at the hearings on the demurrers relator argued and urged upon the court below that the cultural maps should be examined and considered in construing said decree; but that relator believes said maps were not examined or considered by the court, relator's belief being based on the language employed by the court in its ruling on the first demurrer, including the words "After considering the arguments of counsel and examining the complaint in connection with the decree * * *"—no mention of maps being made by the court in either of its rulings in the two cases.

Following the filing of said application and affidavit, an order to show cause was issued and served. Respondents demurred to the application and affidavit, and noticed a motion to strike parts and the whole thereof from the files and to quash and vacate the order to show cause. Later they served and filed their return to the order to show cause and their answer to the application and affidavit. All said matters were heard together.

Section 9231, N. C. L. 1929, as amended, Stats. of Nev. 1939, chap. 108, p. 114, provides in part that "The writ shall be granted in all cases when an inferior tribunal, board, or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board, or officer and there is no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy."

Section 9237, N. C. L. 1929, reads: "The review upon this writ shall not be extended further than to determine whether the inferior tribunal, board, or officer has

regularly pursued the authority of such tribunal, board, or officer."

Respondents (defendants) maintain that there was no error in the lower court's rulings, and further that if there was, it was error within jurisdiction. Relator admits that the district court had jurisdiction of the subject matter and of the parties in both contempt proceedings; also, that it had jurisdiction to rule, though erroneously, that each complaint failed to state facts sufficient to constitute contempt. But he contends that the lower court went far beyond the complaints in its rulings on their sufficiency. Those rulings, he says, show that said court "went behind the complaints and in effect declared the Carville decree so uncertain and invalid as to destroy its effectiveness as a solemn and binding judgment and decree affecting many valuable property rights and thereby undermining the effective administration and enforcement of such decree by the administrative agency provided by the laws of this state for that very purpose. * * * We submit that in entertaining and permitting the attack made upon the Carville decree in the instant matter and thereafter making the ruling it did make thereon the lower court exceeded its jurisdiction * * * The district court's ruling on the demurrers was in excess of its jurisdiction when it, first, entertained a collateral attack upon the Carville decree, and then second, ruled in effect that the collateral attack was well taken * * *."

Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified, or by a proceeding in equity to prevent its enforcement, the attack is a "collateral attack." Generally, a judgment is not subject to collateral attack if the court which rendered it had jurisdiction of the subject matter and of the parties. A judgment which, although erroneous, is valid is not subject to collateral attack, but a void judgment is subject to such attack; and in proceedings brought to enforce a judgment, the defendant is not precluded from showing

that the judgment was void. Long v. Tighe, 36 Nev. 129, 133 P. 60; 31 Am. Jur., Judgments, sec. 576; Restatement of the Law, Judgments, secs. 11, 11a, 11b, 11f. These rules are so well established as not to require citation of further authorities.

██ A judgment or decree may be so uncertain and indefinite as to be impossible of administration, unenforceable and void. And a judgment may be partly valid and partly void. In re Bassett Creek, 62 Nev. 461, 155 P. 2d 324, 327; Tudor v. Jaca, Or., 165 P. 2d 770, 772; 30 Am. Jur., Judgments, sec. 128, pp. 1195, 1196, note 63; 34 C. J., Judgments, sec. 563, 564, note 32; 67 C. J., Waters, sec. 546, note 80; 31 Am. Jur., Judgments, sec. 405.

█ It is well settled that indefiniteness and uncertainty in a judgment or decree may constitute a good defense in contempt proceedings. State v. Bailey, 132 Or. 350, 285 P. 809; Wall v. Superior Court of Yavapai County, 53 Ariz. 344, 89 P. 2d 624, 628; 17 C. J. S., Contempt, sec. 14, p. 19, note 34; 13 C. J., Contempt, sec. 17; 43 C. J. S., Injunctions, sec. 259, subsec. b; sec. 275, subsec. b, p. 1046, note 93.

The Carville decree should be considered as a part of each complaint in the two district court contempt cases. If each of said complaints, so considered, shows on its face that the provisions of the Carville decree, alleged to have been violated by defendants, are void, then the lower court had jurisdiction to sustain the demurrers, unless relator is correct in his contention that said court exceeded its jurisdiction and failed to regularly pursue its authority when it permitted defendants to attack the validity of said decree and based its rulings upon the ground that said decree, insofar as it affected the defendants, was so indefinite and uncertain as to be unintelligible, unenforceable, incapable of administration, and void.

· █ It is our opinion that the lower court did not exceed its jurisdiction, nor fail to regularly pursue its authority in making the rulings complained of. Central

Pac. R. Co. v. Board of Equalization of Placer County, 43 Cal. 365; Roberts v. Police Court, 185 Cal. 65, 195 P. 1053; State v. District Court, 27 Mont. 280, 70 P. 981. And cf. Cornbleet v. Second Judicial District Court, 58 Nev. 227, 73 P. 2d 828; Covington v. Second Judicial District Court, 56 Nev. 313, 50 P. 2d 517; State v. McFadden, 43 Nev. 140, 182 P. 745. As many private law libraries do not have the early California decisions, we quote one paragraph from the opinion of Chief Justice Wallace in Central Pac. R. Co. v. Board of Equalization of Placer County, supra: "The mere grounds upon which the determination is reached may or may not be correct in themselves. These may be supported by evidence inadmissible when tested by the rules governing the introduction of evidence. The reasons given for the conclusion arrived at may or may not be such as address themselves to the judgment of others; but erroneous views entertained, or incorrect reasons assigned, or evidence erroneously admitted in deciding the controversy, do not make a case of want of jurisdiction. The judgment of the Board of Equalization upon the question of valuation involved was the purpose, and the lawful purpose, had in view by the railroad company when it presented its petition before it praying a reduction of valuation. The judgment of the Board upon that question was obtained. That judgment was to the effect that no reduction ought to be made. The company now come here to say that in arriving at that particular judgment the Board exceeded its powers. The proposition then is, that if a question of valuation be brought before the Board, and it determine it one way—that is, reduce the valuation—then it is a determination within its jurisdiction to make; but if it determine it the other way—that is, refuse to make the reduction—then such determination is one without the lawful jurisdiction of the Board to make. But the conclusive answer to this is, that jurisdiction over a question presented being conceded, carries with it necessarily the authority—the mere power—to decide the question either way—that to

hold that there was jurisdiction to decide in only one way, and not in the other, is to say that there was in reality no question before the Board at all—it is to dictate the determination in advance."

The district court's rulings may have been grievously erroneous, but if so it was error within jurisdiction. The main issue in the contempt proceedings was whether certain parts of the Carville decree are void. In order to determine whether the lower court ruled correctly in permitting defendants to attack that decree, it would be necessary for this court to decide the main issue in the contempt proceedings. This, in effect, would require a decision on the merits, and would mean converting the writ of review into an appeal.

In our opinion the lower court regularly pursued its authority. It had jurisdiction, not only of the subject matter and parties, but also to rule on the demurrers and to sustain them on the ground that they did not allege sufficient facts to constitute contempts. Relator, as well as the defendants, stipulated that the court could examine the Carville decree, and the application and affidavit show that it was relator's desire that the cultural maps should also be examined by the court. It thus seems clear that the court had jurisdiction to entertain the attacks on certain provisions of the Carville decree, and if it be assumed for purpose of discussion that the court's rulings were wrong, it nevertheless had the same power to make such rulings as it had to make correct ones. "Wherever power is lodged, it may be abused; but this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice." Ex parte Kearney, 7 Wheat. 38, 45, 5 L. Ed. 391; State v. McFadden, supra, 43 Nev. at pages 148, 149, 182 P. 745.

If these cases were before us on appeal, we would have the power and it would be our duty to decide whether the rulings of the lower court were correct;

but in certiorari our inquiry is limited to the question whether the lower court acted within its jurisdiction in making those rulings.

Relator places much reliance on the cases of Goodall v. Superior Court, 37 Cal. App. 723, 174 P. 924, and Taylor v. Superior Court, 20 Cal. 2d 244, 125 P. 2d 1. We think the answer to that position, in a case such as that now before us, is to be found in Roberts v. Police Court, supra, at pages 1054, 1055 of 195 P.

In the consideration of this case we have at no time lost sight of the fact that a court, though having jurisdiction of the subject matter and of the parties, may nevertheless exceed its jurisdiction within the meaning of our certiorari statutes. Radovich v. Western Union Tel. Co., 36 Nev. 341, 344, 135 P. 920, 136 P. 704. But, as stated in State v. McFadden, supra [43 Nev. 140, 182 P. 748], the irregularities discussed and ruled upon in the Radovich and certain other Nevada cases "showed an obvious departure from some prescribed rule of procedure, and consisted of the omission on the part of the trial judge to do something that was necessary for the orderly conduct of the case, or doing it at an unreasonable time and in an improper manner."

While we might not agree with the views of the district court as to the invalidity of certain parts of the Carville decree, we cannot say that there is nothing whatever of a substantial nature in each of the complaints upon which to base that court's conclusions.

In some jurisdictions, where there is no appeal or other satisfactory remedy, certiorari may lie to review determinations involving new and difficult questions and important public questions, even where a lower tribunal has not exceeded its jurisdiction. But Nevada is not one of those jurisdictions. In State v. Justice Court, 46 Nev. 133, 207 P. 1105, 1106, this court said: "The rule is so well established that the limit of the inquiry upon certiorari is the question of the jurisdiction of the court, that it should never again be questioned, directly or

indirectly, in this jurisdiction." We are not advised of any exception to this rule, unless it be in that part of sec. 9231, N. C. L. 1929, which was added by the amendment of 1939, Stats. of Nev. 1939, chap. 108, p. 114. If the scope of the writ of review is to be further enlarged in this jurisdiction, it must be by way of legislative enactment or constitutional amendment.

Relator contends that if there were any defects in the Carville decree so far as the rights of defendants are concerned, they should have been remedied in the adjudication proceedings before the decree became final. This rule may be entirely sound with respect to decrees which are merely irregular or erroneous; we do not think it is applicable to those which are entirely invalid. 1 Freeman on Judgments, 5th Ed., sec. 305, note 6.

Relator emphasizes the fact that the Carville decree has been in effect more than ten years. With regard to this point we quote from 31 Am. Jur., Judgments, sec. 401, pp. 66, 67, notes 19, 20, 21: "It is also worthy of notice that the passage of time, however great, does not affect the validity of a judgment; it cannot render a void judgment valid. It may, however, affect presumptions of validity applicable to a judgment." See also sec. 423 of the same article.

Nothing that has been said in this opinion is to be understood as expressing approval of the rulings made by the district court. And the court does not decide whether secs. 7940, 7942, 7943, and 7968, N. C. L. 1929, or any of them, constitute plain, speedy, and adequate remedies within the meaning of sec. 9231, N. C. L. 1929; nor do we determine what remedies other water users on the Little Humboldt River stream system may have against respondents for injuries growing out of their allegedly wrongful conduct.

Application denied.