No. 829          November 20, 2024          263

IN THE COURT OF APPEALS OF THE
STATE OF OREGON


In the Matter of A. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. F.,
*Appellant.*

Deschutes County Circuit Court
23JU05741; A183993

Bethany P. Flint, Judge.

Argued and submitted September 24, 2024.

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Stacy M. Chaffin, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Affirmed.

Egan, J., dissenting.

**AOYAGI, P. J.**

The juvenile court entered a judgment of jurisdiction and disposition, asserting dependency jurisdiction over mother's child. On appeal, in her sole assignment of error, mother challenges a court order included in the judgment, ordering mother to "comply with the terms of the Action Agreement" prepared by the Department of Human Services (DHS) and attached to the judgment. Mother argues that, although the juvenile court could order her to engage in specified services, it lacked legal authority to order her to comply with the entire Action Agreement. She further argues that ordering her to comply with the entire Action Agreement and incorporating it into the judgment "blurs *** critical distinctions" between DHS's role as case planner and the court's role as neutral arbiter and "raises institutional concerns" as it "gives the appearance of unlawful delegation."

We conclude that the claim of error is unpreserved. *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal."). After mother admitted to the jurisdictional allegations, her counsel told the court that mother's "only objection" was "to the actual action agreement itself" in that she "would prefer that the judgment just have typed in the services, which is common, as opposed to adopting the entire action agreement and everything included therein." Mother's counsel continued, "So I would prefer it to be cleaner, and that is my sole objection." The court noted but overruled the objection, stating that "the action agreement will be ordered and incorporated in the jurisdictional judgment in full force and effect in its totality" with one modification.

We have consistently held that arguments urging a trial court to make a particular finding, exercise its discretion in a particular way, or the like are inadequate to preserve a claim that the trial court *lacked legal authority* to rule in a way other than that urged by the proponent. *See, e.g.*, *State v. R. W. G.*, 288 Or App 238, 240, 404 P3d 1131 (2017) (noting the "important distinction" between an argument seeking to convince the trial court not to be *persuaded* by evidence favoring the other party and one seeking to convince the trial court that the evidence is *legally insufficient*

to support a verdict for the other party—and explaining that the latter type of argument is required to preserve a claim of legal insufficiency); *State v. Dorsey*, 259 Or App 441, 445, 314 P3d 331 (2013) (holding that the defendant did not preserve a challenge to the trial court's legal authority to order restitution, where she asked the court to make "favorable factual findings" on restitution); *State v. Stacey*, 302 Or App 470, 475, 459 P3d 261 (2020) (holding that the defendant did not preserve a challenge to the trial court's legal authority to allow rebuttal argument, where he asked the court not to allow it as a discretionary matter).

Applying that principle here, mother's claim of error is unpreserved. Mother certainly objected to the court adopting the entire Action Agreement into its order. However, she repeatedly framed her objection in terms of a "preference," and she described her preferred alternative as "common" and "cleaner," not legally required. Nothing about mother's objection would have alerted the juvenile court that its legal authority was in question, nor is there any indication that the juvenile court understood mother to be challenging its legal authority—as distinct from mother trying to persuade the court to follow her personally preferred approach.

Because mother never challenged the juvenile court's *legal authority* to order compliance with the entire Action Agreement, DHS did not have an opportunity to address that issue below, nor did the juvenile court consider or address it. *See State v. Quebrado*, 372 Or 301, 310, 549 P3d 524 (2024) ("At its core, preservation asks whether the parties, and the trial court, had a fair opportunity to meet the merits of the argument later advanced on appeal and thereby avoid the error at the outset or to correct the error upon its occurrence."); *State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) ("Sometimes, the winds of preservation can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed *on this issue, for this reason?*" (Emphasis in original.)). We therefore reject mother's claim of error as unpreserved.[1]

_____

[1] Mother does not argue that the alleged error is "plain," so we decline to engage in plain-error review. *See State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (discussing requirements for plain-error review); *State v. Atwood*, 332 Or App 495, 498 n 2, 549 P3d 51 (2024) ("[W]e normally will not exercise that

The dissent would treat the claim of error as preserved and rule in mother's favor on the merits. *See* 336 Or App at 267 (Egan, J., dissenting). We disagree on preservation for the reasons already described. As for the merits, we share some of mother's concerns regarding the practice of ordering a parent in a dependency case to comply with the entirety of a DHS action agreement, thus potentially subjecting the parent to contempt proceedings in the event of noncompliance with anything in the agreement. At a minimum, such practice creates undesirable uncertainty as to what portions of the action agreement are enforceable in contempt. *See Macleay Estate Co. v. Bailey*, 132 Or 350, 356, 285 P 809 (1930) (court orders that "are uncertain and indefinite in their terms, will not sustain" a contempt judgment; rather, "the act complained of must be so clearly defined in the order that it will appear with reasonable certainty that the order has been violated"). This is not the appropriate case to decide whether juvenile courts are *legally permitted* to take such an approach, however, given the lack of preservation of that issue. Accordingly, we affirm.

Affirmed.

**EGAN, J., dissenting.**

I respectfully dissent because I would conclude that mother preserved her argument that the juvenile court was not authorized to order that she "comply with the terms" of the action agreement, as prepared by the Department of Human Services (DHS), and on the merits, I would also conclude that the juvenile court erred in ordering that mother "comply with the terms" of the action agreement and attaching the action agreement to the jurisdictional judgment.

We will not review a claim of error on appeal "unless the claim of error was preserved in the lower court * * *, provided that the appellate court may, in its discretion, consider a plain error." ORAP 5.45(1). To sufficiently preserve an argument "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with

_____

discretion in the absence of an explicit request for plain-error review and concomitant plain-error arguments.").

enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). While a party must "raise the relevant issue at trial," it is less important for the party "to make a specific argument or identify a specific legal source with respect to the issue raised." *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998). To decide whether the objection raised the "issue" being argued on appeal, we "must view the facts in light of the purposes of fairness and efficiency that underlie the [preservation] requirement." *Id.*

In this case, mother objected to the trial court including the action agreement in the judgment, and she requested that the court solely include the "services" from the action agreement "as opposed to adopting the entire action agreement and everything included therein." Mother then specifically noted the parts of the action agreement that she did not object to including in the judgment. That argument sufficiently preserved the issue as to whether the trial court could order that mother must comply with the action agreement. Through her objection, mother indicated that she did not want the *substance* of the entire action agreement be included within the order. She specifically stated the provisions that she did not object to, which indicated to the trial court that the other provisions were objectionable to include in the court's order, and it was objectionable to attach the entirety of the action agreement to the judgment rather than including the unobjectionable provisions. Although mother provides a more detailed argument on appeal as to why the court erred by including the agreement, her argument before the juvenile court was "specific enough to ensure" that the juvenile court could avoid the error, and mother was not required to "to make a specific argument" when she raised the issue to the juvenile court. *Accord*, *Wyatt*, 331 Or at 343; *Stevens*, 328 Or at 122.

In addition, the juvenile court's response to mother's objection indicated that it understood the issue that she raises on appeal. *See State v. Solano*, 332 Or App 646, 657, 551 P3d 938, *rev allowed*, 372 Or 763 (2024) (Pagán, J., dissenting) ("We have previously gauged a trial court's response to an argument to determine whether it understood the

argument to be the one raised on appeal." (Citing *Putnam v. Board of Parole*, 290 Or App 436, 439-40, 417 P3d 524, *rev den*, 363 Or 224 (2018).)). The juvenile court went through each section of the action agreement, and it concluded, with one exception,[1] that each section of the action agreement was "appropriate" to include within the court's judgment. It also noted mother's "objection as to the court ordering and attaching the action agreement," it overruled her objection, and it incorporated the action agreement "in the jurisdictional judgment in full force and effect in its totality with the modification to the parenting [education]." By discussing the different aspects of the action agreement and determining that all but one was appropriate to include in the order, the court rejected mother's objection to the agreement being included in the order, and thereby concluded that it had the legal authority to include that agreement.

I would conclude that mother's objection met the principles underlying the preservation requirement in this case such that mother preserved her assignment of error. She raised the issue of including the action agreement within the judgment and gave the juvenile court an opportunity to consider the objection, permitting the other parties to respond, and allowing the record to develop.[2] *See Peeples v. Lampert*, 345 Or 209, 219-21, 191 P3d 637 (2008) (discussing policy considerations underlying preservation requirement, namely "giv[ing] a trial court the chance to consider and rule on a contention," "permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise," and "foster[ing] full development of the record"). Here, mother's objection provided the juvenile court an opportunity to address that objection, and the juvenile court concluded that including

---

[1] The juvenile court changed the parenting class that was outlined in the action agreement from an "ages and stages" parenting class to a "parenting with substance use disorder" parenting class.

[2] The state argued for the juvenile court to incorporate the action agreement:

"I would ask that the Court adopt the action agreement as—incorporate that into the judgment for purposes of—of the orders that the Court is going to make with respect to what the parents are going to do. That's the document that the agency relies upon and it's a go-to for all the parties to go directly to the interactions and agreements between the Court, the—the parties and the agency so that we're all on the same page."

the action agreement within the jurisdiction judgment was "appropriate."

The majority cites to criminal and juvenile delinquency cases to argue that mother did not preserve her assignment, because she sought a favorable ruling rather than making a "legal argument" to support her position that the action agreement could not be included in the order. In those cases, we determined that a party's argument was not sufficient to preserve legal error when the party argued that the court should make a particular finding, rather than arguing that it was required, by law, to make a specific ruling. *See State v. R. W. G.*, 288 Or App 238, 240, 404 P3d 1131 ("There is an important distinction between (1) an argument that seeks to convince a trial court, sitting as fact finder, not to be *persuaded* by the evidence favoring the other party, and (2) an argument that seeks to convince the trial court that the evidence is *legally* insufficient to support a verdict for that other party. And, to preserve an 'insufficiency of the evidence' claim for appeal, a party must present the trial court with the latter type of argument." (Emphases in original.)). I disagree that this analysis applies when mother informed the juvenile court that she objected to specific inclusions with the jurisdictional order, thereby flagging this issue for the court, even if mother did not make a specific argument or cite a specific legal source for the idea that the juvenile court cannot order the entirety of the action agreement.

Having found that mother's argument was preserved, I would also conclude the court erred when it ordered that mother "comply with the terms" of the action agreement, which it attached to the judgment. *See Dept. of Human Services v. T. B.*, 326 Or App 192, 194, 531 P3d 718 (2023) (noting that we review whether the juvenile court has authority to make a particular order for legal error).

As the majority states, the juvenile court's judgment could be enforceable through contempt. *See* ORS 419B.929 ("A court may enforce an order or judgment directing a party to perform a specific act by punishing the party refusing or neglecting to comply with the order or judgment, as for a contempt as provided in ORS 33.015 to 33.155."); *see*

*also* ORS 419A.180 ("In case of failure to comply with any order of the juvenile court, the court may proceed for contempt of court against the person failing to comply."). The action agreement, as attached to the judgment, requires that mother achieve the department's "expected outcomes," "develop insight into how her substance use has impacted her ability to safely parent," "demonstrate the ability to place her child's needs before her own," "manage her impulses at a level that does not put her child at risk of harm," and "establish/maintain safe, sober, appropriate, and adequate home-like setting *\*\*\**." Based on the expansive nature of the action agreement, the juvenile court would not be able to enforce its order through contempt. *See Air Rescue Systems Corp. v. Lewis*, 292 Or App 294, 298-99, 423 P3d 775 (2018) ("To establish contempt of court based on ORS 33.015(2)(b), plaintiffs had to prove that (1) there was a facially valid court order, (2) the defendant knew of the order, and (3) the defendant voluntarily failed to comply with the order. *\*\*\** Moreover, [the court order] *must be an order that is certain and definite in its terms.*" (Internal quotation marks and citations omitted; emphasis added)); *see also Macleay Estate Co. v. Bailey*, 132 Or 350, 356, 285 P 809 (1930) ("[T]he act complained of must be so clearly defined in the order that it will appear with reasonable certainty that the order has been violated; hence, orders which are uncertain and indefinite in their terms will not sustain" a contempt judgment). Therefore, I would conclude that the trial court erred in ordering that mother "comply with the terms" of the action agreement, because the terms of the action agreement are not appropriate for enforcement through contempt and, consequently, are not appropriate for a juvenile court order.

Accordingly, I would reverse and remand the juvenile court's judgment.

I respectfully dissent.