THE SOCIETY OF THE DIVINE WORD, Petitioner, v. HONORABLE R. KENT MARTIN, Judge, et al., Respondents.

No. 47421.

(Reported in 38 N. W. 2d 619)

AUGUST 5, 1949.

Dan J. Buckley, of Harlan, for petitioner.

G. O. Hurley, of Harlan, for respondents.

OLIVER, J.—The will of William Schmitz gave the Society of the Divine Word, of Techny, Illinois, a $5000 legacy to pay for a student from testator's family or from the parish of Westphalia, Iowa, where he lived, and made the $5000 a charge against the residuary legacies of testator's five sons and one of his daughters. See In re Estate of Schmitz, 231 Iowa 1178, 3 N. W. 2d 512. The will was probated in 1920 and two of testator's sons, John and Tony, were appointed executors without bond. They served as such until 1941 when they tendered their resignations in the face of applications for their removal.

No part of the $5000 legacy had been paid. J. J. Jennings, who was appointed administrator de bonis non, subsequently established and foreclosed a lien for the unpaid part of a charge against certain land which had passed to devisees under the will. Jennings v. Schmitz, 237 Iowa 580, 20 N. W. 2d 897, an appeal in that action, recites much of the history of the doings of the executors here material. After Jennings paid the Society the proceeds of this foreclosure suit, there remained an unpaid balance of $3039.10, plus interest, on its legacy.

In December 1946, the court ordered and adjudged that this amount was due the Society from Tony and John Schmitz, executors, that said executors not be discharged and Tony and John were directed to forthwith pay said sum to the Society of the Divine Word. In August 1947, upon the presentment of affidavits showing nonpayment to the Society, the court ordered that Tony and John show cause why they should not be punished for contempt for disobeying the order of December 1946. Tony and John answered that the estate funds had been distributed by them (prior to 1923) in accordance with an agreement with their brothers and sisters, that the distribution was in good

faith and without intent to deprive the Society of the legacy, that the remaining assets of the estate had depreciated and Tony and John had been individually insolvent since prior to 1930, so as to make it impossible to pay the legacy from the estate or their personal assets, that their failure to perform the 1946 order of court was involuntary and not contumacious and they did not intentionally render themselves unable to perform the order either before or after it was made.

There was no substantial conflict in the evidence. The will charged one hundred sixty acres of the devised land with $16,000. The brothers and sisters orally agreed to accept $13,300 in full settlement of this charge and the executors agreed also they would pay the Society its $5000 bequest from funds on hand and the $13,300, upon the Society's becoming qualified in accordance with the terms of the will. In February 1921, the executors falsely reported the full $16,000 had been paid them, and that they had received the $5000 for the Society from the heirs "charged with the payment thereof, and are holding said sum in trust until there shall be a student from the family or from the parish of Westphalia, Iowa, desirous of entering said aforesaid school at Techny, Illinois". The itemized statement of cash received listed the $16,000 received and deducted $5000 from the balance on hand to be held by John and Tony as trustees for the Society. No notice of the report was given anyone. On the same date an order was filed which finds the executors have collected "$16,000 * * * and also $5000 for the Society and hold the same, subject to the further order of this court." The order approves the report, appoints John and Tony trustees of $4750 ($5000 less $250 state inheritance tax) "for the use and benefit of any student, belonging to the family of deceased, or to the parish of Westphalia."

The true facts were first shown of record in the executors' "Final Report and Resignation" filed in 1941 which stated the 1921 report was in error in these respects. The final report showed that although no part of the $5000 had been collected from the residuary legatees, the executors thereafter distributed to them all the money in the estate, amounting to $7243, more than half of which was paid John and Tony themselves. The

Society first learned of its legacy in 1932 when the Treasurer of Iowa demanded that it pay the inheritance tax thereon. Apparently the only assets remaining in the estate after the distribution were a $2400 note of a son of testator of little or no value, which was thereafter destroyed by the executors, and eighty acres of farm land encumbered by an $8000 mortgage. Tony testified, "We figured the 80 acres was there yet and it was worth at least $300 per acre and there was plenty to pay off whenever our boys would go to school, but we didn't have any money on hand to pay it with." In 1924 the several children of testator conveyed to their sister Annie any interest they might have in this eighty acres to avoid foreclosure of the $8000 mortgage, "because there wasn't enough money left in the estate to pay the interest and taxes on the 80 acres and we signed it over to Annie instead of losing it * * *."

The Findings of Fact recite that Tony and John had been insolvent since prior to 1930 and that when they distributed the property of the estate it appeared to them in good faith that the retained property was sufficient to pay the bequest but that in the subsequent general deflation it decreased in value so there was no equity in it. We may say the proof of the executors. impecuniosity was ample and that one of them testified they thought the retained property was sufficient to pay the legacy.

The Conclusions of Law state:

"That the distribution of the assets in said estate was wrongful.

"That there has been no showing of any wilful or malicious concealing or dissipation of the assets such as would constitute contempt on the part of the said John Schmitz or Tony J. Schmitz.

"It is therefore ordered, adjudged and decreed that the application to show cause * * * be, and the same is hereby dismissed."

We granted a writ of certiorari to review the judgment. It is admitted the executors failed to obey the 1946 order to pay the legacy. Unless this failure was excused it constituted contempt. The question was whether the executors had purged themselves of contempt.

17 C. J. S., Contempt, section 19, page 25, states inability to comply with an order to pay money because of poverty or insolvency or other cause not attributable to the fault of the party charged will usually be accepted as an excuse, but that:

"When the inability is due to the wrongful act of the party himself the contempt is not excused, as where he has misapplied or misappropriated funds held by him as attorney, administrator or executor, receiver, guardian, or in other trust capacity."

See also 12 Am. Jur., Contempt, section 72. Various decisions enunciating this rule are listed in annotations in 134 A. L. R. 933 and 60 A. L. R. 329. In Wise v. Chaney, 67 Iowa 73, 24 N. W. 599, a showing that one ordered to pay estate money to an administrator refused on the ground he had received it as clerk of a prior administrator and had paid it (apparently without authority) to the widow for the support of her family, and in the discharge of claims against the estate, and that he had no money either of his own or of the estate, was held not to purge him of contempt in disobeying the order.

In re Messmore's Estate, 293 Pa. 63, 69, 70, 141 A. 724, 726, 727, which cites and follows the Wise case, states:

"Although not charged with fraud arising malo animo, appellant is guilty of maladministration of trust funds, and this is a species of fraud; he is, therefore, not in the position of one who pleads inability to pay because of poverty which came upon him through no fault of his own. The law is not lenient to those in the position of appellant."

With reference to the contention appellant at no time intended to place himself in contempt, the decision states: "As was said in Cartwright's Case, 114 Mass. 230, the question of contempt 'does not depend upon the intention of the party, but upon the act he has done' * * *."

Cox v. Rice, 375 Ill. 357, 361, 31 N. E. 2d 786, 788, 134 A. L. R. 923, 926, states:

"Here, by making the investments without ever obtaining the court's approval, Cox must be held to have committed devastavit and to have wrongfully disposed of the ward's money.

* * * Since Cox made wrongful disposition of his ward's estate, it remains, in contemplation of law, in his custody and control, and his inability to pay is no defense to the contempt proceeding."

Among decisions citing the Wise case are People v. La Mothe, 331 Ill. 351, 163 N. E. 6, 60 A. L. R. 316, and In re Clift's Estate, 108 Utah 336, 159 P. 2d 872.

We adhere to the foregoing rule and hold the impecuniosity of the executors did not excuse their failure to obey the order directing them to pay the legacy, because their failure to pay it from estate funds was occasioned by their wrongful acts in distributing the assets of the estate. Nor would proof that the dissipation of the assets was not wilful or malicious make the excuse sufficient to purge them of contempt.

That the dissipation of the assets occurred about 1923, many years before the order directing payment, did not bar the contempt proceeding. The contempt proceedings in In re Messmore's Estate, supra, and in various other decisions were brought some years after the wrongful misapplication of the funds. John and Tony Schmitz were not on trial on a charge of maladministration or dissipation of funds of the estate. They were attempting to purge themselves of contempt for their failure to obey the order of the court, made in 1946. Their wrongful acts as executors (about 1923) in dissipating the estate funds merely serve to prevent their excusing, on the ground of impecuniosity, their failure to obey the 1946 order.

The writ of certiorari is sustained and the cause is remanded for further action in harmony with this opinion.—Writ sustained.

All JUSTICES concur except MANTZ, J., not sitting.