Ralph E. Brody et ux., petitioners, v. The District Court of Pottawattamie County, Honorable Folsom Everest, presiding Judge, respondent.

No. 49842.

(Reported in 98 N.W.2d 726)

OCTOBER 20, 1959.

Don H. Jackson, of Council Bluffs, for petitioners.

Ross, Johnson, Northrop, Stuart & Tinley and Paul H. Sulhoff, all of Council Bluffs, for respondent.

LARSON, C. J.—In this certiorari action brought by the petitioners, Ralph E. Brody and Mrs. Ralph E. Brody, we are asked to set aside the order of the respondent which held them in contempt for failure to produce and deliver into court a minor child, Anthony Wayne Ball, in compliance with the order and decree in a habeas corpus proceeding.

On August 29, 1958, the final day of that proceeding, and pending final order, the court stated: "* * * the record may show that the child involved in this habeas corpus action, Anthony Wayne Ball, was produced pursuant to the order of court at the beginning of the trial. By agreement of counsel and on account of his age, he was permitted to be returned to the home for his own protection. The court * * * desires to make it plain that * * * if this court should direct his production or delivery, a failure to comply with that order will be considered a contempt of this court and punishable as such."

Petitioners contend this order sustains their position that at no time, especially after August 29, 1958, were they specifically charged with the actual custody and control of the minor child, Anthony. They further contend there was no substantial evidence to justify a finding that they aided or abetted the mother, Nancy Lee Ball, in her removal of the child from this jurisdiction, or in her refusal to return and deliver him to the Sheriff of Pottawattamie County, Iowa. They conclude that without such a legal obligation and a willful refusal to obey the court's order based on a definite direction to them, they could not be guilty of contempt. The points they list as grounds for reversal are: (1) that the petitioners never had any control over the custody of the child, and this was especially true after the respondent's order in contempt and the issuance of the warrant of arrest; (2) that petitioners cannot be imprisoned for contempt for failure to perform an act not within their power to perform when so ordered, and especially when their predicament was not their fault; and (3) that the burden of proof in a

citation for contempt rests upon the complaining party, and its failure to furnish such proof requires that the complaint be dismissed.

A few further facts are necessary to understand the situation which gave rise to this controversy. As a result of domestic troubles between Nancy Lee Ball and her husband in Kansas, Mrs. Brody, Nancy's mother, and Mr. Brody, her stepfather, brought Nancy and her minor son Anthony to their residence in Council Bluffs, Iowa. Subsequent divorce proceedings in Kansas resulted in a decree granting Mr. Ball a divorce and granting custody of the son, Anthony, to his paternal grandparents in Kansas. As the child was not turned over to the paternal grandparents, they instituted on April 16, 1958, a habeas corpus proceeding in Pottawattamie County naming Nancy Lee Ball and the petitioners as defendants. The writ issued. The judgment of the court that the best interest of the child required that the care and custody be granted to the paternal grandparents was appealed by the defendants. We affirmed the decision in Ball v. Ball, 250 Iowa 763, 96 N.W.2d 317, on May 5, 1959.

Pursuant to the order of August 29, 1958, previously referred to, the child was "returned to the home for his own protection." When on September 9, 1958, the final decision of the trial court was rendered and the defendants appealed, a stay order was obtained from a member of this court. According to the record, sometime later in September Nancy Lee married a man by the name of William Bacot from South Carolina, and the petitioners, Mr. and Mrs. Brody, removed themselves to another address in Council Bluffs. The child remained in the home with his mother. In April of the following year the mother, Nancy Lee, and her new husband took the child to South Carolina. It appeared that she went there as a result of a telephone call informing them of the very serious illness of Mr. Bacot's mother. They did not return. On or about May 1, 1959, the petitioners moved to Marion, Iowa, a division point on the railroad which employed Mr. Brody as an engineer. After their arrest on a warrant issued by the respondent, a hearing was had on the contempt charge and the respondent promptly filed its findings and ordered each petitioner imprisoned in

the county jail for a term of four months, or until they purged themselves by producing and delivering the child Anthony to the Sheriff of Pottawattamie County, Iowa.

It is respondent's position that, as parties defendant in the original habeas corpus action, the court had jurisdiction over the petitioners, that they were charged with illegal possession of the minor child, appeared and defended against that charge, and that they were bound to respect and obey and carry out the order and decree of that court. Furthermore, it points out that by stipulation it was conceded that the child had not been delivered to the sheriff as ordered by the respondent, which ipso facto established the contempt.

I. It is well settled in Iowa that this court will review in certiorari the evidence questioning the legality of a judgment of contempt. While the cause is not triable de novo, and much weight is given to the findings of fact by the trial court, we still are not bound by them. We said in Watson v. Charlton, 243 Iowa 80, 92, 50 N.W.2d 605, 612: "The exact extent to which we may go in deciding questions of fact from the record is vaguely defined; it lies in a shadowland, a 'twilight zone', whose boundaries do not admit of definite charting", citing Andreano v. Utterback, 202 Iowa 570, 210 N.W. 780; Schraeder v. Sears, 192 Iowa 604, 185 N.W. 110; McNiel v. Horan, 153 Iowa 630, 133 N.W. 1070; Roach v. Oliver, 215 Iowa 800, 244 N.W. 899, which hold that we may review the facts upon which the judgment of contempt was founded.

II. It is also the rule in this jurisdiction that in order to warrant a conviction of contempt it must be established by clear and satisfactory evidence that the accused is guilty. Burtch v. Zeuch, 200 Iowa 49, 52, 202 N.W. 542, 39 A. L. R. 1349. We consider proceedings of this character to be in their nature criminal, or quasi-criminal, and thus require a clear case of contempt be shown by the evidence in the record. Watson v. Charlton, supra; Hobson v. District Court, 188 Iowa 1062, 1066, 177 N.W. 40; Crosby v. Clock, 208 Iowa 472, 478, 225 N.W. 954.

The nub of this controversy is whether the petitioners were clearly and sufficiently charged with the possession, care and custody of this two-year-old child to sustain a finding that they

willfully placed themselves in a position where they could not obey the court's order when they moved out of "the home" in September 1958, leaving the child with his mother, and then did not actively resist her attempt to take Anthony with her to the state of South Carolina in April 1959.

In fact, this question troubled the respondent, for the court announced that it "accepts some blame on its own part * * * in that the child was once before this Court, and by agreement of counsel and with the approval of the Court, the custody was left in the defendants during the trial of the matter." This it said "was an error. The child should have been placed in controlled custody and this problem would not have arisen."

It is for us to decide whether the court, when it had the child before it, clearly and concisely placed the "custody" of him in *all* the defendants, as it says it intended. Were the words used, that "he was permitted to be returned to the home for his own protection", sufficient to clearly place the child's custody in the petitioner-grandparents? The learned trial court thought they were, but we do not think them free from doubt and must disagree.

We are aware of the trial court's final judgment and decree in the habeas corpus case ordering each of the defendants, Nancy Lee and Mr. and Mrs. Brody, to immediately deliver Anthony Wayne Ball to the Sheriff of Pottawattamie County, Iowa, as well as its finding that the child was "illegally restrained of his liberty by the defendants", and that counsel for the petitioners accepts some blame for not having asked a dismissal of that part of the findings and judgment as to the Brodys in the appeal to us. These subsequent matters merely increase the difficulty in resolving the problem. They do not change the legal obligation, if any, resting on petitioners after the court's order of August 29, 1958.

■ Without doubt, obedience of a court order *must* be secured, and to secure such obedience is the usual function of a proceeding for contempt. However, it has often been said by able jurists that courts should be explicit and precise in their commands, and should only then be strict in exacting compliance. This is especially true when the nature of the proceedings is criminal.

■ On the other hand, it has also been said that if court orders directed to litigants are too general and appear to be too burdensome and uncertain in their scope, the aggrieved party should petition the court for a modification, clarification or construction of the order and, if he fails to do so, he acts at his own peril. However, we are satisfied this rule must be applied with great caution in criminal contempt matters where severe penalties are pronounced.

Justice Frankfurter once said, "To be both strict and indefinite is a kind of judicial tyranny", and that "Ambiguity lurks in generality and may thus become an instrument of severity." McComb v. Jacksonville Paper Co., 336 U. S. 187, 195, 197, 69 S. Ct. 497, 501, 93 L. Ed. 599, 606. Such results must, of course, be avoided in the cause of justice.

■ Were the petitioners justified in their understanding that after the court's order on August 29, 1958, custody of the two-year-old child, Anthony, was not placed in their hands and that they were not the ones responsible for his delivery to the sheriff if and when demanded? As we are not convinced the obligation as to them was clear and concise, it is proper to carefully consider the evidence and their testimony to determine for ourselves its truth and reasonableness. Presumptions are all in their favor.

In this connection, see our discussion as to the validity of indefinite and uncertain judgments in the recent case of Lynch v. Uhlenhopp, 248 Iowa 68, 72, 73, 74, 78 N.W.2d 491, 494. We said there: "Contempt proceedings are quasi-criminal. While the object to be attained is often civil obedience, the punishment frequently resembles that inflicted for violation of the criminal laws." We referred there to the rule as stated in 12 Am. Jur., Contempt, section 67, page 434: "While contempts are not to be regarded in any sense as a substitute for the ordinary criminal laws of the country, they are, in their essential characteristics, to be deemed primarily criminal and punitory. * * * Proceedings for contempt are therefore commonly treated as criminal in their nature even when they arise in civil actions." Also see 49 C. J. S., Judgments, section 72, pages 191, 192, where it is said: "A judgment must be definite and certain in itself, or capable of being made so by proper construction.

*It must fix clearly the rights and liabilities of the respective parties to the cause,* and be such as defendant may readily understand and be capable of performing * * *." (Emphasis supplied.) We said further in the Lynch case: "This is particularly true in contempt proceedings, where the alleged contemnor is in danger of drastic punishment if the judgment does not clearly inform him what is required." Also see pronouncements in Plummer v. Superior Court, 20 Cal.2d 158, 164, 124 P.2d 5, 8; Golden Press, Inc. v. Rylands, 124 Colo. 122, 235 P.2d 592, 28 A. L. R.2d 672, 677; State ex rel. Smith v. Sixth Judicial District Court, 63 Nev. 249, 257, 167 P.2d 648, 651.

▓▓ Thus the general rule which seems well settled is that indefiniteness and uncertainty in a judgment, order, or decree may well constitute a good defense, especially in quasi-criminal contempt proceedings. Lynch v. Uhlenhopp and Watson v. Charlton, both supra; Society of the Divine Word v. Martin, 240 Iowa 1084, 1088, 38 N.W.2d 619; 17 C. J. S., Contempt, section 19, page 25; 12 Am. Jur., Contempt, section 72. Also see decisions in 134 A. L. R. 933 and 60 A. L. R. 329; Annotation, 93 L. Ed. 608, 609, 610; McComb v. Jacksonville Paper Co., supra, 336 U. S. 187, 69 S. Ct. 497, 93 L. Ed. 599.

In point, perhaps, is the case of Howard S. Tierney, Inc. v. James, 269 App. Div. 348, 354, 355, 56 N. Y. S.2d 8, 13, 14, where the defendant had been enjoined from soliciting, accepting or receiving insurance business from customers of the plaintiffs who had not been specifically allotted to him by arbitrators. The trial court found him in contempt of that order. The Supreme Court reversed, and said: "The better way would have been to list in the interlocutory judgment the names of all customers, dealing with whom was enjoined, thus eliminating all doubt." Other authorities and their pronouncements of this just and well-established rule are found in Lynch v. Uhlenhopp, supra.

So in the matter before us we think it would have been better if the trial court had been more clear and precise in its order of August 29, 1958, as to which of the three defendants, Nancy Lee Ball, Mr., or Mrs. Brody, was to have the obligation to care for, possess and return Anthony Wayne Ball to the court when required, or what was specifically required of each of the defendants. Having the child before it, clear and concise

responsibility for its custody becomes the duty of the court. In other words, as stated by the court, it should have established "controlled custody."

The mother originally brought the child with her to the residence of the petitioners. He was of the tender age of about two years at the time. As against their daughter Nancy, his mother, it does not appear that the petitioners ever asserted or claimed the right of possession. It is true they often acted as baby sitters, but that gave them no custodial rights. There was no admission that they felt any duty to care for the child, and their subsequent actions do not indicate anything to the contrary.

Obviously the act of making the petitioners parties defendant in the habeas corpus action would do no more than require that they produce the child, if they had him, or show that they did not possess or restrain the child. He was brought into court as ordered in the writ, but again it does not appear in this record who actually delivered the child into court in compliance with the original writ. Is it not fair to assume that his mother brought him? Is that not the only presumption we may make in the absence of clear and concise evidence to the contrary? We are satisfied the answers to these questions under the record favor petitioners' contention that the court's order was not clear and specific and that the record did not clearly disclose any contemptuous refusal by petitioners to obey the order.

We are also satisfied there was no sufficient showing of any action on the part of the petitioners which would justify the conclusion that they aided or abetted the daughter Nancy Lee in her illegal and deliberate act of removing the child Anthony Wayne Ball from this jurisdiction.

Perhaps petitioners should have informed the court when they moved from "the home" in which the child had been residing in Council Bluffs, and perhaps they should have advised the court when the daughter Nancy Lee proposed to take the child to South Carolina, even for a visit, but, without clear and specific direction from the court that such was their obligation, we do not feel their acts or omissions constituted any willful contempt of the able trial court's orders. The ambiguity was such as to permit every plausible excuse. We think they have

satisfactorily explained their understanding as to who was obligated to deliver the child when required by the court. As previously indicated, the usual rules in criminal matters must apply, and every presumption must operate in their favor. Mere suspicion of guilt, even though strongly felt, is not sufficient.

 III. While these conclusions dispose of this matter, we note that it is also true that a contemnor must be allowed to purge the contempt by performing the act required or by undoing or reversing the acts constituting the alleged contempt. Section 665.7, Code, 1958; 17 C. J. S., Contempt, section 106, page 147. In Watson v. Charlton, supra, we said at page 92 of 243 Iowa: "Likewise, if the alleged contemnor has done all in his power to obey the court's order he will usually be entitled to discharge, even if he is, through no present fault of his own, unable to comply. 17 C. J. S., section 108b, page 148." This must be especially true where the acts were, as here, omissions to contest the child's possession with the natural mother, and especially where there is no clear and concise designation as to the responsibility imposed by the court on the petitioners.

 It is true that one having a clear and concise obligation or responsibility cannot place himself in a position where later it is impossible to perform that obligation or responsibility at the court's direction, and be excused for nonperformance. Wise v. Chaney, 67 Iowa 73, 24 N.W. 599; Tredway v. Van Wagenen, 91 Iowa 556, 60 N.W. 130; Society of the Divine Word v. Martin, supra, 240 Iowa 1084, 1088, 38 N.W.2d 619; 12 Am. Jur., Contempt, sections 24 and 30, pages 405 and 411; 17 C. J. S., Contempt, section 19, page 25; 12 Am. Jur., Contempt, section 72, page 438. Also see the decisions in 134 A. L. R. 933 and in 60 A. L. R. 329, and in annotation, 93 L. Ed. 608, at 609, 610; McComb v. Jacksonville Paper Co., supra, 336 U. S. 187, 69 S. Ct. 497, 93 L. Ed. 599. Had it appeared the petitioners had the clear obligation of custody and control of Anthony, their excuse for not complying with the final order in the habeas corpus case would have been of no value, but under our conclusion that the order of custody was not sufficiently clear and concise, we must consider petitioners' explanation of their inability to produce the child. We think it was sufficient to purge them of fault, if any.

We must accept petitioners' testimony that they did not know when their daughter Nancy Lee left for South Carolina that she would not return the child to Iowa, and that when they learned of our affirmance of the trial court's decree, they did all that they could by telegraph, letter and telephone, to persuade the mother to return the child. It is not denied.

We cannot agree that the attitude of these petitioners disclosed in the original habeas corpus action, by their refusal to send their daughter and the child, Anthony, back to Kansas in compliance with the custody decree handed down by the Kansas court, was substantial evidence of their contempt for the orders of the Iowa court. Yet it appears their attitude expressed in the original action was largely the factor which caused the respondent to pronounce such severe punishment upon these petitioners. Its order providing: "* * * however, that said contempt may be purged at any time by the production of the individual who is the subject of the original proceedings, Anthony Wayne Ball, and his delivery to the sheriff of this county * * *," was almost impossible to perform.

Unless the daughter, Nancy Lee, whose father-in-law is the sheriff in the county of her present residence in South Carolina, and whose present lawyer advises against the return of Anthony to Iowa, decided to bring the child back, there would be no possible way for petitioners to purge themselves under the court's judgment herein. This change of heart appears most unlikely. On the other hand, petitioners' effort by telegram, letter and telephone, prior to their arrest, to persuade Nancy Lee to return the child to Iowa was about as much as they could do, and tends to show a proper respect for the court's orders.

Being convinced the evidence does not justify a finding of noncompliance with a clear and concise order of court, or a refusal to respect that order, we must hold that the writ of certiorari should be sustained and the judgment finding the petitioners guilty of contempt should be annulled.

Writ sustained and petitioners are discharged.

All JUSTICES concur except PETERSON, J., who takes no part.