WANDA L. TUDOR *v.* RUSSELL C. ROBERTS, JUDGE

5-4287                               415 S. W. 2d 557

Opinion delivered June 5, 1967

*Winslow Drummond,* for appellant.

*Gene Worsham* and *Fletcher Jackson, Jeff Mobley* and *Joe Purcell,* Attorney General; *Don Langston* and *William R. Hass,* Asst. Attys. General, for appellee.

GEORGE ROSE SMITH, Justice. This petition for a writ of certiorari to quash an order of the Faulkner Circuit Court, holding the petitioner in contempt of that court, is a companion case to *First National Bank in Little Rock* v. *Roberts, Judge,* also decided today. The petitioner contends that the evidence is insufficient to support the court's finding that she was in contempt. We sustain that contention and accordingly direct that the order in question be quashed.

On March 23, 1967, the prosecuting attorney for the Fifth Judicial District obtained an order directing that a subpoena *duces tecum* be served upon the petitioner, Mrs. Tudor. The subpoena was issued on the same day and directed that the witness appear in the Faulkner Circuit Court at nine o'clock on the morning of March 25 and bring with her ''all cancelled checks, bank ledger

sheets, bank deposit slips, bank check book stubs and all other documents you have relating to the bank account in the First National Bank of Little Rock on which you were authorized to write checks during the weeks and months preceding the November general election of 1966.'' The subpoena was served on Mrs. Tudor in Pulaski county on March 2.

The next day Mrs. Tudor appeared with her attorney in the Faulkner Circuit Court, which was sitting at Morrilton. She did not bring any of the bank records. She testified that the bank account did not belong to her. It consisted of donations made to the campaign fund of the Republican party. She was employed by the party during the campaign; the account was placed in her name for convenience. When the subpoena was issued she was no longer an employee of the party and did not have possession of any of the requested records.

Mrs. Tudor also testified that after she received the subpoena she talked to several officials of the party (whom she named) in an effort to obtain the records. She was told: ''These are not your records. How could you possibly bring something that isn't yours?'' She did not go to the bank in an attempt to get whatever records that institution might still have.

At the same hearing the president of the bank testified that as far as the bank was concerned Mrs. Tudor was the owner of the account and that at her request the bank would have turned over to her such records as were available. On the basis of that testimony the court found Mrs. Tudor to be in contempt, because she had not gone to the bank to see if the records were obtainable.

The court erred in its ruling. The subpoena directed Mrs. Tudor to bring such of the specified records as ''you have.'' It is an undisputed fact that Mrs. Tudor did not have in her possession any of the records in question. Her failure to produce the records carried on implication of

disrespect for the court or willful disobedience of its order.

It is important to note that this case does not involve a subterfuge on Mrs. Tudor's part, by which she professes to be unable to produce records that are really within her control. There is no reason in the record to question the sincerity of her conclusion that she had no moral right to surrender the records—any more than there would be to question the conclusion of a lawyer's private secretary that she should not surrender confidential files to which she might have access. In the circumstances we are not willing to say that Mrs. Tudor was guilty of contumacious conduct.

Writ granted.