Howard W. FOUST, Petitioner,

v.

James P. DENATO, Judge of the Ninth Judicial District of Iowa, Respondent.

No. 53685.

Supreme Court of Iowa.

March 10, 1970.

J. R. McManus, Des Moines, for petitioner.

Richard C. Turner, Atty. Gen., and James C. Sell and Bennett Cullison, Jr., Asst. Attys. Gen., for respondent.

STUART, Justice.

This is an original proceeding in certiorari to review an order by the trial court adjudging petitioner guilty of contempt of court for failure to produce documents specified in a subpoena duces tecum.

Howard W. Foust, President of Local 67, International Association of Bridge, Structural and Ornamental Iron Workers, A.F.L.–C.I.O. was subpoenaed to appear before the Polk County Grand Jury March 13, 1969 with "all receipt books, receipt stubs and copies of receipts relating to payments of money to (the union) by all individuals assigned to work through said union, * * *" for the two year period following January 1, 1966. He appeared without bringing the records and was cited for contempt.

At the hearing to show cause why he should not be punished for contempt, he testified he did not have possession of or access to the records listed in the subpoena duces tecum on March 13, 1969 or any prior date. The records were in the exclusive care, possession, custody and control of William Reed, the financial secretary, business agent and treasurer of the local union. He testified he did not know where in the union hall the records were kept and that he did not have keys to the union hall or Mr. Reed's desk. He was neither bonded nor salaried as president. Mr. Reed told him the records were his personal property and refused to turn them over to him. He testified he had no intention of disobeying the subpoena insofar as it was possible for him to obey it and that if he had had access to them he "would gladly have brought them down here".

The constitution and by-laws of the international union were introduced into evidence and supported the claim that the financial secretary is the custodian of the records specified in the subpoena. Petitioner as president has the power to fill a vacancy in the office of financial secretary for the unexpired portion of the term and signs all financial documents. The executive committee, of which he is a member, may inspect the books of the financial secretary at any time.

The only evidence offered by the state was the transcript of his testimony before the grand jury which disclosed his failure to obey the subpoena duces tecum. It is the state's position that Foust as president of the local and member of the executive committee had access to the requested records and was the proper person to subpoena to compel their production.

I. We require that contempt be proven by clear, satisfactory and convincing evidence. McDonald v. McDonald, Iowa, 170 N.W.2d 246, 247 (1969); Harkins v. Harkins, 256 Iowa 207, 211, 127 N. W.2d 87, 89 (1964); Brody v. District Court of Pottawattamie County, 250 Iowa

1217, 1221, 98 N.W.2d 726, 729 (1959); Johnstone v. Johnstone, 226 Iowa 503, 508, 284 N.W. 379, 382 (1939). But when the evidence clearly shows the order of court has been disobeyed, a party who seeks to purge himself of contempt by showing his inability to comply with the order of court has the burden to prove it. Harkins v. Harkins, supra, 256 Iowa at 211, 127 N.W. 2d at 91, and citations; Society of the Divine Word v. Martin, 240 Iowa 1084, 1089, 38 N.W.2d 619, 621 (1949); Roach v. Oliver, 215 Iowa 800, 804, 244 N.W. 899, 902 (1932); Pewick v. Meyer, 202 Iowa 134, 135–136, 209 N.W. 396, 397 (1926); Annos. 120 A.L.R. 709; 76 A.L.R. 396; 40 A.L.R. 550; 31 A.L.R. 652; 22 A.L.R. 1266.

"Confinement should not be directed to compel a party to do something which he is wholly unable to do. But the burden of proving inability should be on the defendant, who should not be held to have sustained it when he has failed to make a good-faith effort to conform." Hopp v. Hopp, 279 Minn. 170, 156 N.W.2d 212, 217 (1968). See Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415, 423 (1957); United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884, 890–891 (1950); Socony Mobil Oil Co. v. Northern Oil Co., 126 Vt. 160, 225 A.2d 60, 63.

"Ordinarily one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply. A court will not imprison a witness for failure to produce documents which he does not have, unless he is responsible for their unavailability, * * * or is impeding justice by not explaining what happened to them." United States v. Bryan, supra, 339 U.S. at 330–331, 70 S.Ct. at 730, 94 L.Ed. at 890; McPhaul v. United States, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136, 142 (1960).

"It is settled that a criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control." Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415, 421 (1957); Wilson v. United States, 221 U.S. 631, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D 558; United States v. Patterson, 2 Cir., 219 F.2d 659, 660; United States v. Watson, 5 Cir., 266 F. 736, 739 (1920).

"Failure to comply with a subpoena to produce books, papers or documents can constitute contempt. Thus, a corporation officer who unjustifiably refuses to comply with a subpoena calling for corporation records in his control commits a contempt. And a union officer who appears at a grand jury investigation pursuant to a personal subpoena ad testificandum but who fails to produce the records required by a subpoena duces tecum addressed to him in his capacity as a union officer, and refuses to testify as to the whereabouts of such records, may be proceeded against for failure to produce the records demanded by the subpoena duces tecum." 17 Am.Jur. 2d 44, Contempt § 39; see Curcio v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed. 1225, 1232, n. 7 (1957); United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L. Ed. 1542, 152 A.L.R. 1202, 1205.

As we apply these principles to the facts of this case, the difficulty with the state's position becomes obvious. Although it was no problem to show petitioner disobeyed the subpoena duces tecum, the evidence shows Reed, not petitioner, was the custodian of the records sought and had actual possession and control of them. He claimed they were his own records and refused to deliver them to petitioner. Petitioner, as president of the union, had no control over the records. He might have been able to get possession of the documents through action of the executive committee, but we do not believe it was necessary for him to make this attempt in order to show a good faith effort to comply with the subpoena duces tecum under this unchallenged record.

In Tudor v. Roberts, 242 Ark. 795, 415 S.W.2d 557, 558 (1967) contemner was no

longer an employee of the political party whose records were sought and did not have possession of the. requested records which included a bank account for contributions carried in her name. She made no attempt to get the records from the bank although the banker testified that he considered her the owner of the account and would have given her the available records. On the basis of that testimony the trial court found her guilty of contempt. The Arkansas court said:

"The subpoena directed Mrs. Tudor to bring such of the specified records as 'you have.' It is an undisputed fact that Mrs. Tudor did not have in her possession any of the records in question. Her failure to produce the records carried no implication of disrespect for the court or willful disobedience of its order.

"It is important to note that this case does not involve a subterfuge on Mrs. Tudor's part, by which she professes to be unable to produce records that are really within her control."

The record here is not as strong as that in the Tudor case. There is no indication the executive committee would have consented to make the records available. No cases require a person to attempt to use physical force to obtain possession of documents not in his custody or under his control.

See also Traub v. United States, 98 U.S. App.D.C. 43, 232 F.2d 43, 47; Healy v. United States, 186 F.2d 164, 171. An examination of the cases discloses no reason why the subpoena duces tecum could not have been addressed to Reed who had their custody and control.

The state cites International Union of Operating Engineers v. Bryan, (Ky.) 255 S.W.2d 471 (1953), in which the Kentucky Supreme Court upheld an adjudication of contempt against the union and its business agent for failure to produce documents. The subpoena duces tecum on which the contempt was based was addressed to the business agent individually and in his official capacity. The president and secretary who had custody of the records were non-residents and beyond the jurisdiction of the court. The court concluded the subpoena was actually an order to the union which it was required to obey.

We are not prepared to go so far. The subpoena here was not directed to the union as such. Without passing upon the obligation of officials and the union when so served, we do not believe an order addressed to a person, individually and as an officer of the union, so clearly requires the union itself to respond that it or an officer who has made a good faith effort to comply can be found guilty of contempt when it does not respond.

II. Petitioner also asserts the subpoena was void because it did not describe and identify the papers sought with sufficient accuracy. As the writ is sustained on the first ground we need not discuss this question in depth. It is sufficient to say we do not agree. See the cases cited in section 6 of the Annotation in 23 A.L.R.2d 862, 875.

The writ is sustained and the Contempt Order is dissolved.

Writ sustained.

MOORE, C. J., and MASON, RAWLINGS, BECKER, LeGRAND, and REES, JJ., concur.

UHLENHOPP, J., takes no part.