STATE of Iowa, Plaintiff,

v.

DISTRICT COURT IN AND FOR POLK
COUNTY, Defendant.

No. 2–57627.

Supreme Court of Iowa.

June 25, 1975.

Richard C. Turner, Atty. Gen., and Larry M. Blumberg, Asst. Atty. Gen., for plaintiff.

William J. Lillis of Connolly, O'Malley, Lillis & Hansen, Des Moines, for defendant.

Heard by MOORE, C. J., and RAWL-INGS, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

In this certiorari action the State challenges a district court order dismissing the State's "Application Claiming Contempt for

Violation of Injunction" against Julia McGinnis, operator of the "Golden Age Retirement Home."

The home, located at 4140 Grand Avenue, Des Moines, Iowa, is occupied by approximately 40 persons. Apparently because of the building structure, Ms. McGinnis has been unable to obtain a health care facility license pursuant to Chapter 135C, The Code.

The State initially brought action for permanent injunction against Ms. McGinnis. Following trial an injunction entered October 26, 1973 enjoining her from "establishing, operating, managing or otherwise conducting at 4140 Grand Avenue, Des Moines, Iowa without first possessing the license required by Chapter 135C, Code of Iowa 1973, a boarding home as defined in Section 135C.1(2)  *  *  *," or any other unlicensed health care facility as defined by Chapter 135C.

Section 135C.1(2) defines "boarding home," insofar as relevant here, as a place providing for persons "who by reason of age, illness, disease, or physical or mental infirmity are unable to sufficiently or properly care for themselves, but who are essentially capable of managing their own affairs." This section defines other health care facilities, mainly distinguished by the degree of care, management, or nursing required. Section 135C.21 provides a criminal penalty for operating a health care facility without a license and also provides such a person may be temporarily or permanently restrained from operating such an unlicensed facility.

The injunction further restrained Ms. McGinnis from holding herself out to other persons as operating a licensed health care facility. A period of ninety days was

" *  *  *  provided for individuals who were residents  *  *  *  and are within the classification of boarding home residents, i. e.,

"persons who by reason of age, illness, disease, or physical or mental infirmity are unable to sufficiently or properly care for themselves,

"to find, or have found for them, and to remove to, suitable accommodations elsewhere  *  *'  *."

Trial court's decree additionally ordered Ms. McGinnis to give 45 day's "written notice of the granting of the within injunction and of the necessity of securing and moving to accommodations elsewhere  *  *  *  to the respective relative, guardian, conservator, attorney, or other party responsible for each such individual who comes within the classification of boarding home resident *  *.  *," and retained jurisdiction to make any further or additional orders as might be necessary or advisable.

By application filed August 1, 1974, the State sought to have Ms. McGinnis punished for contempt for violating the injunction. See § 665.2(6), The Code; rule 330, Rules of Civil Procedure. The application alleged affected residents were not removed as mandated by the decree of October 26, 1973; notice had not been given to residents as required by the decree; notice to newly affected residents had not been given within a reasonable time; and Ms. McGinnis had allowed new affected residents into the home since the date of the injunction. These allegations were denied. Hearing was had before Honorable John N. Hughes, district court judge, who had entered the injunction decree.

Evidence indicated Ms. McGinnis had permitted one Leo Julich to be admitted to her facility from the Veterans Hospital on January 23, 1974, following the injunction. Trial court refused to consider proffered testimony tending to show Julich's condition brought him within the classification of persons who should be provided for in a licensed boarding home, apparently on the theory Julich's subsequent death prevented Ms. McGinnis from purging any contempt involved.

At the close of its evidence the State unsuccessfully moved to amend its application to assert Ms. McGinnis had held out her home as a licensed facility.

Trial court dismissed the State's application. In ruling the presiding judge interpreted his own injunctive decree that, "The Court was concerned that these individuals not be summarily ejected from defendant's premises in view of the two fold problem facing most or all of them of first finding other accommodations, and second finding accommodations within their financial means." Trial court held it was not the intent of the decree to place sole responsibility of removing affected persons from the home on Ms. McGinnis, notices were given pursuant to the decree, and the State had not carried its burden to show her willful failure to obey the decree by merely proving affected persons were still in the home.

The court named 12 residents still in the home who came within the classification of persons requiring health care facility services and "recommended" the State designate representatives from the Iowa State Department of Health and Iowa State Department of Social Services to assist these individuals in locating available licensed facilities, to investigate financial arrangements, and if necessary assist these persons in applications for financial assistance.

Trial court held the State had not proved by clear and satisfactory proof that Ms. McGinnis willfully admitted into her residence "new" persons requiring licensed health care facilities.

In this certiorari proceeding the State contends trial court "abused its discretion" 1) in refusing to admit into evidence and consider the proffered testimony of two witnesses concerning the condition of the "new" resident, Mr. Julich, 2) in not permitting the State to amend its application to conform to the proof, and 3) in not holding Ms. McGinnis in contempt and in "placing the burden of compliance with the injunction * * * upon the State."

■ I. We preliminarily note the posture of this controversy and our scope of review. The State claims relief by way of certiorari. Its brief (p. 16) indicates it proceeded under the following statute:

"665.11 Revision by certiorari. No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari." (Emphasis supplied.)

It is clear § 665.11 proscribes appeal only when a defendant is found in contempt. See Bailey v. Broderick, 212 N.W.2d 395, 398 (Iowa 1973). When the application to punish for contempt is dismissed, a direct appeal is permitted. McDonald v. McDonald, 170 N.W.2d 246, 247 (Iowa 1969); Harkins v. Harkins, 256 Iowa 207, 210–211, 127 N.W.2d 87, 89 (1964); Bixby v. Bixby, 253 Iowa 1172, 1174, 115 N.W.2d 852, 854 (1962). See Annot. 24 A.L.R.3d 650, 681–682, 684, 686. Although rule 352, R.C.P., ostensibly would permit us to proceed as though the proper form of review had been selected, the defect of parties which surfaced in Penland v. Penland, 255 Iowa 308, 312–313, 122 N.W.2d 333, 336 (1963) may raise serious questions of jurisdiction and remedy.

■ There is Iowa authority indicating a trial court's refusal to find a defendant in contempt may also be reviewed on writ of certiorari. See Bixby v. Bixby, supra, 253 Iowa at 1174, 115 N.W.2d at 854; Barber v. Brennan, 140 Iowa 678, 119 N.W. 142 (1909); Currier v. Mueller, 79 Iowa 316, 44 N.W. 555 (1890); Lindsay v. District Court of Clayton County, 75 Iowa 509, 39 N.W. 817 (1888). Where as here neither party has formulated an issue relating to our scope of review and where the State seeks to shoulder the burden imposed by the form of review it selected, we elect to consider the issues as posed in certiorari. Pertinent is our rationale in Eden Township Sch. Dist. v. Carroll County Bd. of Ed., 181 N.W.2d 158, 166 (Iowa 1970): "[T]his proceeding does not arise from litigation where no appeal is permitted. * * * Since plaintiffs elected to proceed in certiorari * * * they are bound by procedure and limitations of the remedy of certiorari."

■ Relief in certiorari is strictly limited to questions of jurisdiction or illegality of trial court's ruling, where (as here) there is no applicable statutory exception to the provisions of rule 308, R.C.P. See Wright v. Denato, 178 N.W.2d 339, 340 (Iowa 1970); Smith v. City of Fort Dodge, 160 N.W.2d 492, 495 (Iowa 1968).

■ Because contempt is treated as criminal or quasi-criminal in nature, in reviewing a contempt judgment we examine the evidence, not *de novo*, but to assure ourselves that proof of contempt is clear and satisfactory. Lane v. Oxberger, 224 N.W.2d 245, 247 (Iowa 1974); Sound Storm Ent., Inc. v. Keefe, 209 N.W.2d 560, 565 (Iowa 1973). But this is an exception to our basic certiorari review rule (see State v. Cullison, 227 N.W.2d 121, 126 [Iowa 1975]) that we do not review fact findings of the lower tribunal further than to ascertain if they are sustained by competent and substantial evidence. Rules 334, 344(f)(1), R.C.P.; State v. District Court of Iowa, in and for Linn County, 218 N.W.2d 641, 643 (Iowa 1974).

■ In this controversy there was no judgment of contempt. Our review is therefore governed by the rule ordinarily applied and last articulated, and is necessarily constrained not only by the burden the State assumes by proceeding in certiorari in this court, but the burden imposed upon it in trial court, to prove Ms. McGinnis' willful disobedience of the injunction decree by clear, satisfactory and convincing evidence. Crary v. Curtis, 199 N.W.2d 319, 322 (Iowa 1972); Foust v. Denato, 175 N.W.2d 403, 404 (Iowa 1970); Orkin Exterminating Co., Inc. (Arwell Div.) v. Burnett, 160 N.W.2d 427, 431 (Iowa 1968).

II. We turn first to the contention trial court "abused its discretion" by failing to allow into evidence and consider testimony of two witnesses relating to the condition of Mr. Julich, a "new" resident admitted into Ms. McGinnis' home after entry of the injunction decree.

We first note although trial court did permit this testimony to come in only by offer, its ruling indicates this testimony may have been considered and found insufficient as a basis for a contempt judgment. The ruling noted the State did not attempt to establish the condition of individuals identified as "new" residents other than in Mr. Julich's case, and concluded the State "has not proved by clear and satisfactory proof that defendant willfully admitted into her residence 'new' persons requiring licensed health care facilities."

The controverted evidentiary ruling is put into proper perspective only by examining it in light of the proffered evidence and other testimony which was admitted.

During a three-hour period on March 20, 1974, Dr. Elizabeth Procter and nurse Mrs. Hoy, both Iowa State Department of Health employees, and Dr. William J. Morrissey, a physician, observed the approximately 40 residents of Golden Age Retirement Home, following which they compared notes, then formulated a professional consensus as to which individuals should be in licensed facilities. It was the professional opinion of Dr. Procter, the State employee, that Mr. Julich needed "at least custodial care" because "[I]t was very difficult for him to get up and down stairs. He had to have food brought to him and he was slow in moving and would have difficulty, again, apparently in taking care of errands downtown if such were needed." Dr. Morrissey expressed the same professional opinion as to Mr. Julich's proper classification, based upon "his difficulty in ambulation."

A memorandum which was before the court, from the files of Iowa State Department of Health and relating to an August 22, 1974, inspection of Ms. McGinnis' home, carries the notation "Leo Julich returned to the Veterans Hospital."

The proffered testimony indicates 67-year-old Mr. Julich had an infected left eye and injured left wrist when he was admitted to the Veterans Hospital on January 4, 1974. The eye was removed. He was dis-

charged January 23, 1974. The Veterans Administration social worker who contacted Ms. McGinnis testified he "would have remarked" to her that Julich "needed some supervision of his daily living activities." Ms. McGinnis "agreed to accept him." She did not indicate "either way" whether her home was a licensed facility. The offered testimony of the Veterans Hospital nurse as it related to a conversation with Ms. McGinnis was, "[m]y concern was that he needed assistance so he would not stay in bed all the time, would not be sedentary; that he needed assistance with getting up and about. It was difficult for him to move without help."

The proffered testimony added little to the testimony already before trial court without objection or contradiction. All the evidence taken together is not so clear, satisfactory and convincing so as to compel a finding Mr. Julich's difficulty in ambulation was sufficient to alert Ms. McGinnis he was incapable of "sufficiently" or "properly" caring for himself.

The plain inference from the State's expert witnesses is that a proper classification of individuals to determine whether they require the care of a licensed facility, and if so, which type, is the subject of professional evaluation as are the criteria employed to determine whether such persons can, in the language of § 135C.1, "sufficiently or properly" care for themselves. As one State witness testified, "[W]hen it comes to the care of people all is not all black and all is not all white, that in dealing with people that there are gray areas as to whether you feel they really require care in a licensed home or whether they don't * * *."

■ We have said that before one may be punished as a contemnor for a violation of the provisions of a mandatory judgment, those provisions must be clear, specific, precise and unequivocal. Brody v. District Court of Pottawattamie County, 250 Iowa 1217, 1222–1224, 98 N.W.2d 726, 730–731 (1959); Lynch v. Uhlenhopp, 248 Iowa 68, 72–77, 78 N.W.2d 491, 494–497 (1956). If the decree enjoins not specific acts or omissions, but results, the existence of which must necessarily be determined by expert opinion testimony it may be ineffectual as a basis for a contempt proceeding. Lynch v. Uhlenhopp, supra, 248 Iowa at 74, 78 N.W.2d at 495.

■■ We have often reiterated our rule that certiorari is not an appeal, and may not be used to correct mere errors on the part of trial court. Reed v. Gaylord, 216 N.W.2d 327, 333 (Iowa 1974); Eden Township Sch. Dist. v. Carroll County Bd. of Ed., supra at 166; Zwingle Ind. Sch. Dist. v. State Board of Public Instr., 160 N.W.2d 299, 301 (Iowa 1968). If we were required on certiorari to review every trial court evidentiary ruling there would be little to distinguish certiorari from an ordinary law action appeal, and the review limitations of rule 308, R.C.P. (" * * * limited to questions of jurisdiction of illegality * * * ") would be emasculated. See Luke v. Civil Service Commission of Sioux City, 225 Iowa 189, 194, 279 N.W. 443, 446 (1938). In the case *sub judice* trial court did not apply an erroneous conclusion of law in reaching its final disposition, which might invoke our intervention. See Sueppel v. Eads, 261 Iowa 923, 928, 156 N.W.2d 115, 118 (1968). Nor is there any indication trial court's evidentiary calls resulted in a manifest injustice in this proceeding or were otherwise determinative in the ultimate decision. See Jacobs v. City of Chariton, 245 Iowa 1378, 1392, 65 N.W.2d 561, 568–569 (1954).

We find no merit in the State's contentions relating to this issue.

III. The State next asserts trial court "abused its discretion" in not permitting the State to amend its application to conform to the proof. The proposed amendment would add a new allegation "That the defendant held herself out as operating a licensed Health Care Facility in violation of the injunction."

It is true Ms. McGinnis was so enjoined in the decree. In division II we set out the proffered evidence the State relies on as a

basis for the amendment. There is no dispute Ms. McGinnis accepted Julich into her home. The proffered testimony of these witnesses indicated Ms. McGinnis made no representations "either way" concerning the licensed status of her facility.

Touching upon its refusal to permit the amendment in its ruling dismissing the application, trial court reasoned, "Defendant was entitled to know at the start of the proceedings the grounds upon which she was being charged with having violated said injunction." Apparently trial court had in mind the quasi-criminal nature of the proceeding before it.

Our holding in the last division governs our disposition of this issue. The error, if any, in the course-of-trial ruling below will not be reviewed on certiorari where it does not appear it resulted in substantial injustice or was otherwise controlling in the final disposition of the proceeding below.

■ IV. Finally, the State contends trial court "abused its discretion" in not holding Ms. McGinnis in contempt and in "placing the burden of compliance with the injunction * * * upon the State."

The last allegation in this bifurcated proposition is readily resolved. We do not interpret the recommendation in trial court's ruling as mandatory on the State, but merely a proposed *modus operandi* to assist in relocating residents of the home whose condition then required care in a licensed facility. The State's knee-jerk reaction to what the court termed a suggestion indicates it may be more concerned with inflicting punishment on Ms. McGinnis than in finding a solution for the problems of the affected and unfortunate residents.

■ Nor are we convinced, after giving proper weight to trial court's findings which are supported by substantial evidence, that trial court's dismissal of the application was illegal.

Although the application alleged the 45-day notices required under the injunction decree to be given by Ms. McGinnis had not

been sent, this was controverted by the evidence and finally conceded to be unsupportable by the State.

The State's evidence proved the condition of an individual who could legally reside in an unlicensed home might deteriorate to the point his care should be provided in a licensed home. Several such persons were first identified in the State's inspection of the McGinnis home on March 20, 1974. There is no proof these persons were in that condition when admitted to the home. The State made a trial admission it could present no proof any patient requiring removal had been admitted after October 26, 1973, other than the proffered testimony relating to Mr. Julich. The ultimate classification, as we have already noted, was the result of the consolidated professional opinion of three experts. Additional notices were then sent to these people by Ms. McGinnis, at the request of Iowa State Department of Health, although the State now claims this notification (not specifically required by any court order) was tardily sent.

No evidence was adduced showing Ms. McGinnis actively interfered with removal of residents nor was there any showing she did not do all in her power to have the affected residents move. The inferences the State attempts to generate in these respects hardly met its burden to show willful violation of the injunction by clear, satisfactory and convincing proof.

A trial court's interpretation of its own decree is given great weight. Peters v. Peters, 214 N.W.2d 151, 157 (Iowa 1974). Interpreting its decree in this case, trial court has determined there has been insufficient proof upon which to hold Ms. McGinnis in contempt. Upon our limited review in certiorari we are not disposed to interfere with its determination.

We note trial court properly has retained jurisdiction in the initial injunction action to make further or additional orders. We

now annul the writ. The case is remanded to district court for further proceedings.

Writ annulled.