# IN THE COURT OF APPEALS OF IOWA

No. 19-1295
Filed July 1, 2020

IN RE THE MARRIAGE OF MICHAEL J. KELLY
AND JAMI R. KELLY

Upon the Petition of
**MICHAEL J. KELLY,**
        Petitioner-Appellee,

**And Concerning**
**JAMI R. KELLY, n/k/a JAMI R. MASON,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Pottawattamie County, Kathleen A.

Kilnoski, Judge.

        A mother appeals a custody modification and contempt ruling. **AFFIRMED.**

        P. Shawn McCann of McGinn, Springer & Noethe, Council Bluffs, for

appellant.

        Justin A. Quinn, Omaha, Nebraska, for appellee.

        Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

In a modification ruling, the district court directed Michael Kelly and Jami Mason to share the physical care of their two children. The court also declined to hold Michael in contempt of the divorce decree. Jami appeals those two rulings. Like the district court, we find Michael showed a substantial change in circumstances to justify modification. And Jami did not prove that Michael willfully violated the decree. We thus affirm the district court's order.

## I.      Facts and Prior Proceedings

Michael and Jami married in 1997 and divorced in December 2013. Their two children—A.J.K. born in 2002, and C.J.K, born in 2006—are the subjects of this appeal. This modification does not affect Jami's older son, C.M.K., who is now an adult. The decree awarded physical care to Jami and provided Michael with liberal visitation. At that time, both parents lived in Council Bluffs.

A few months after the decree issued, Jami moved across the state to Muscatine to be with her fiancé, Lonnie Mason. Her older son, C.M.K., then seventeen, wanted to stay with Michael in Council Bluffs. To address those circumstances, Michael sought to modify the decree. Before hearing, the parties reached a stipulated modification agreement, which the court approved in September 2015. C.M.K. would stay in Council Bluffs and the younger children would relocate with Jami.

Almost three years later, Michael again petitioned to modify the decree.[1] The petition asserted that by agreement of the parties, A.J.K. and C.J.K. were

---

[1] In the petition, Michael asked for "sole physical care." The district court believed "at trial it was clear that he wanted shared physical care."

living with him and attending school in Pottawattamie County. The petition also alleged Jami was involuntarily committed for attempting suicide and was not stable enough to care for the children.

In her answer, Jami explained she was currently living in Muscatine where she "completed a divorce from her second husband." She acknowledged the civil commitment, but denied attempting suicide. She also admitted the children were now attending school in Council Bluffs. And she shared her plans to move back to Pottawattamie County.

In December 2018, the district court granted Michael's request to suspend his child support payments because he was caring for the children. Then in January 2019, Jami applied for a rule to show cause why Michael should not be held in contempt of the custody provisions of the decree. The application asserted she had "reestablished herself back in the Council Bluffs area" and notified Michael that the children should return to her physical care. In February 2018, the parties mediated a parenting plan to "improve their communications for the benefit of the children."

In June 2019, the district court held a combined hearing on Michael's modification petition and Jami's contempt application. Michael testified at the hearing that he was no longer concerned about Jami's mental health. He also asked for joint physical care with a "week on week off" schedule.

In a July 2019 order, the court modified the 2013 and 2015 custody orders—ordering the parents to have joint physical care of A.J.K. and C.J.K. The court

dismissed the application for contempt. Jami challenges those decisions on appeal.[2]

## II. Scope and Standards of Review

We apply two different standards of review in this appeal. For the modification of custody, we review the record de novo. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). "At the same time, we recognize the virtues inherent in listening to and observing the parties and witnesses." *In re Marriage of Pendergast*, 565 N.W.2d 354, 356 (Iowa Ct. App. 1997). So, although they are not binding, we give weight to the district court's findings of fact. *See id.* On the court's refusal to hold Michael in contempt, we review for an abuse of discretion. *See In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995) (noting Iowa Code section 598.23 (1993) provides that a person who willfully disobeys the decree "*may* be cited and punished" for contempt).

## III. Analysis

## A. Modification to Shared Physical Care

In bringing the modification action, Michael had a heavy burden to show the conditions since the decree was entered in 2013 (and modified in 2015) had so "materially and substantially changed that the children's best interests make it expedient" to approve the requested modification. *See In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995) (holding party who seeks modification must show by preponderance of the evidence that a substantial change in circumstances arose since the decree's last modification). The changed

---

[2] Jami may directly appeal dismissal of her application to punish for contempt. *See State v. Iowa Dist. Ct.*, 231 N.W.2d 1, 4 (Iowa 1975).

circumstances had to meet three criteria: (1) the court did not contemplate them when entering the decree; (2) they were "more or less permanent, not temporary," and (3) they related to the welfare of the children. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

Jami claims Michael did not provide "any evidence that there has been a permanent change in circumstances that affects the children's wellbeing." She contends that by the time of trial, the children were back in her physical care as "originally awarded in the decree and reaffirmed in the 2015 stipulated modification."

While technically true, Jami's contention oversimplifies the situation, skipping the four plus years she spent in Muscatine. To that point, the district court identified "several changes affecting the children" that occurred since the 2015 stipulated modification order. The court chronicled that Jami's second marriage was "plagued by verbal and emotional abuse" which led her to ask Michael to care for the children while she obtained a divorce. Michael agreed and enrolled the children in Council Bluffs schools for the 2018 academic year. Only after she fully transitioned back to her parents' Pottawattamie County home in early 2019 was Jami in a position to resume physical care of the children.

Remarriage and moving residences sometimes qualify as material and substantial changes in circumstances to support a custody modification. *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996) (explaining distance may present "obstacles to regular and active visitation by the noncustodial parent"). Here, we are faced with the inverse situation. Jami divorced her second husband and moved closer to Michael since the 2015 modification. These changes

presented the opportunity for Michael to have greater physical and emotional contact with the children. In fact, he accommodated Jami's request to take physical care of them, at least until she recovered her stability. Like the district court, we find Michael demonstrated a substantial change in circumstances related to the welfare of the children.

Next, Jami argues Michael did not meet the second element necessary to a modification petition, that he had the superior parenting ability. *See Frederici*, 338 N.W.2d at 158 ("A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well-being."); *but see Melchiori v. Kooi,* 644 N.W.2d 365, 368 (Iowa Ct. App. 2002) (clarifying that when parents are "on equal footing" in a joint-physical-care modification case, the question is which parent can render "better" care). But Michael was not seeking to wrest physical care from Jami nor did he want to move from joint physical care to placing the children in his physical care. Instead he wanted to be on equal footing with Jami by moving from her physical care to their shared care. Because he was not requesting transfer of physical care to him, he was not required to show he could minister to the children's needs more effectively than Jami.[3] *See In re Marriage of Ruckman*, No. 13-1920, 2014 WL 3748601 at *8 (Iowa Ct App. July 30, 2014) (analyzing conditional provision in decree and granting modification to joint physical care); *see also Buschbom v. French*, No. 07-1036, 2008 WL 680404, at *6 (Iowa Ct. App. Mar. 14, 2008) ("Because we affirm joint physical care, we

---

[3] We also find it significant that Jami trusted Michael to be the primary caregiver for the children while she wrapped up her second divorce.

need not consider the issue of who can more effectively minister to the son's needs.").

Rather, the question was whether joint physical care was in the children's best interests. *See generally Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). When determining physical care, we are guided by the factors in Iowa Code section 598.41(3) (2019) and the additional considerations in *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974). *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). In deciding if shared care is appropriate we concentrate on these four factors: (1) approximation (replicating the historical care-giving arrangement between the parents); (2) the parents' ability to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) how much the parents agree in their approach to daily matters. *Hansen*, 733 N.W.2d at 697–99. We'll review the most critical factors in turn.

As a starting point, the district court believed both parents were suitable caregivers for the children. Jami was thirty-nine and worked as a dental hygienist. At the time of the hearing, she was living with her parents in Crescent, Iowa, just north of Council Bluffs but was looking for independent housing. She had secured work as a dental assistant in Omaha. Michael was forty-one and retired from the Air Force. He received Veterans Administration disability payments because of serious lung issues. He was remarried and had two young children with his second wife. Both Jami and Michael have good insight into their children's strengths and needs. Both parents strived to improve the children's academic success. Like the district court, we find both Michael and Jami are loving and engaged parents capable of raising healthy children.

Still, Jami complains the district court gave too little attention to the fact that Michael assaulted her in 2013. Yet contrary to her complaint, the court addressed this issue head-on: "The assault was more than six years ago. There is no evidence that Michael ever violated the no contact order resulting from his conviction for simple assault." Jami also expressed concern about Michael's membership in the Sons of Silence, a motorcycle club. Michael testified he did not expose the children to any inappropriate activities of the club. The district court accepted his assurances, as do we.

Particular to shared care, the district court thoroughly analyzed the four *Hansen* factors. On approximation, the court found both parents were "hands-on" and had, at different times, been the primary caregiver. As for their ability to communicate and show mutual respect, the court accepted an exhibit of text messages that showed the parents' cordial and professional exchanges about the children. The court disagreed with Jami's perspective that Michael had "manipulated" her and the children. To the contrary, the court found Michael was capable of communicating respectfully about parenting issues. Optimistically, the court found "both parties are intelligent and capable of communicating better in the future." Similarly, the court did not detect a high degree of conflict between the parents. Notably, they made efforts to mediate their disagreements. And the court viewed their approach to discipline and other day-to-day parenting methods to be compatible. At bottom, the court found the children would benefit from spending the maximum time with both parents.

We see the record in much the same light as the district court. While their relationship is somewhat strained, these parents remain good candidates for providing shared care. We thus affirm the modification.

## B. Refusal to Hold Michael in Contempt

As a separate matter, Jami argues the district court should have found Michael in contempt of the amended decree for refusing to return the children to her custody in December 2018. She contends he willfully denied her parenting time and visitation until the court's February 2019 order denying Michael's request to temporarily modify the previous physical care order.

To convict Michael of contempt, Jami had to prove beyond a reasonable doubt that he willfully violated a court order. *See* Iowa Code § 598.23(1); *Gimzo v. Iowa Dist. Ct.*, 561 N.W.2d 833, 835 (Iowa Ct. App. 1997). The district court found her proof came up short. The court determined:

> Jami did not provide direct communication to Michael about her returning to her parents' home until after his child support obligation was suspended. Michael believed the parties had agreed that the children would stay in Council Bluffs, with him. Jami had not responded to Michael's requests to participate [in] mediation (required under the court's general order in custody cases), and her attorney had communicated that once she returned to Council Bluffs, she would participate in mediation. . . .
> Once the February 2019 order was entered, Michael followed it. The court does not find that any disobedience to the earlier decrees by Michael was willful.

We find substantial evidence in the record to support the district court's decision. *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140 (Iowa 1988). Given the fluidity of the physical care situation in late 2018 and early 2019, Jami failed to show Michael willfully violated a court order. After reviewing the record, we conclude the district

court did not abuse its discretion in refusing to find Michael in contempt.

**AFFIRMED.**